Industrial Services Contracting, Inc. and Liberty Mutual Insurance Company, Insurance Carrier, Appellants *v.* John R. Wilson and Workmen's Compensation Appeal Board, Appellees.

Argued October 28, 1976, before Judges CRUMLISH, JR., KRAMER and MENCER, sitting as a panel of three.

84

*Thomas J. Ferris,* for appellants.

*C. Jerome Moschetta,* with him *John A. Moschetta,* and *James N. Diefenderfer,* for appellees.

OPINION BY JUDGE MENCER, January 5, 1977:

John R. Wilson (claimant) was awarded benefits for an occupational disease under Section 108(n) of The Pennsylvania Workmen's Compensation Act[1] (Compensation Act). The referee awarded compensation against the employer, Industrial Services Contracting, Inc. (ISC), alone. ISC's appeal to the Workmen's Compensation Appeal Board (Board) was dismissed, and ISC appealed to this Court.

Claimant spent the vast majority of his 38 years of gainful employment working as an arc welder, although in the past he had taken jobs as a coal miner when he could not find welding employment. Since 1954 he had worked continuously as a welder, his last

[1] Section 108(n), 77 P.S. §27.1(n), was added by the Act of October 17, 1972, P.L. 930, to the Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §1 et seq. It defines occupational disease as including "[a]ll other diseases (1) to which the claimant is exposed by reason of his employment, and (2) which are causally related to the industry or occupation, and (3) the incidence of which is substantially greater in that industry or occupation than in the general population. *For the purposes of this clause,* partial loss of hearing in one or both ears due to noise; and *the diseases silicosis, anthraco-silicosis and coal workers' pneumoconiosis resulting from employment in and around a coal mine, shall not be considered occupational diseases.*" (Emphasis added.)

employer being ISC. During his employment in the two occupations of welding and mining, claimant was exposed to the fumes and dusts peculiar to arc welding and to mining. In October of 1973, while employed by ISC in a position he had held since 1969, claimant was forced to leave his job and seek medical attention for his respiratory condition. He returned to work in January of 1974 but left after a week. In October of 1974, claimant was advised that he suffered from pneumoconiosis, more particularly anthraco-silicosis and arc welder's pneumoconiosis, which resulted from his total and cumulative exposure to coal dust as a miner and his total and cumulative exposure to other noxious dusts as an arc welder. Claimant was also informed that he was totally and permanently disabled. ISC was notified by letter of October 31, 1974 of a disability resulting from exposure to the hazard of arc welder's pneumoconiosis. On November 13, 1974, claimant filed a petition claiming benefits for an occupational disease. The claim, filed on an old form which was customarily used for claims under The Pennsylvania Occupational Disease Act[2] (Disease Act), advised of a total disability resulting from silicosis and anthraco-silicosis which had commenced on October 21, 1974.

Several hearings were held before a referee. Near the outset of the proceedings, claimant's counsel moved to amend his petition so as to claim benefits under Section 108(q).[3] The referee announced that although the petition had been filed on the old form for silicosis and anthraco-silicosis, it would be treated as though filed under the Compensation Act in reference to Section 108(k) and possibly 108(n). Claim-

---

[2] Act of June 21, 1939, P.L. 566, *as amended*, 77 P.S. §1201 et seq.

[3] As there is no Section 108(q) in the Disease Act, the request could have had no purpose other than to amend the petition so as to claim benefits under the Compensation Act.

ant's counsel did not object, but ISC opposed the amendment. ISC subsequently objected to a series of questions propounded by the referee which sought to elicit from the claimant himself an indication as to under which statute he preferred to press his claim. The claimant indicated his preference for the Compensation Act.

At the request of ISC, the referee appointed an impartial medical witness, Dr. C. Charles Iannuzzi, who, in a report admitted without objection, opined that the claimant was totally and permanently disabled by anthraco-silicosis and arc welder's pneumoconiosis as a result of his total and cumulative exposure to dust in the mines as well as the extents of exposure while working as a welder. Before the referee, the medical witness explained that it is impossible to separate the two forms of pneumoconiosis in the lungs. The distinction is made on the basis of an occupational history indicating the types of dust to which an individual has been subjected. Dr. Iannuzzi indicated that he therefore attributed the claimant's condition to the effects of his employment in two separate occupations: his early employment as a miner and his most recent and more prolonged employment as an arc welder. The medical witness added that, in his opinion, the amounts of coal dust which might have been on the objects welded by the claimant after July 1, 1973 had no effect on his medical condition.

The referee, in his decision, arrived at a conclusion of law that the claimant had proved all the elements necessary to sustain a finding of total and permanent disability under Section 108(n) of the Compensation Act, and he awarded compensation accordingly. ISC's appeal to the Board was dismissed, and the award was affirmed.

Assigning several reasons, ISC urges this Court to reverse the Board. Central to ISC's position is the finding that claimant's disability was attributable both to anthraco-silicosis and to arc welder's pneumoconiosis. It is contended that the instant award does not properly deal with both causative factors and would be more appropriate if made either under the Disease Act or under another paragraph of Section 108 of the Compensation Act which specifically deals with anthraco-silicosis. If we accept either contention, the Commonwealth of Pennsylvania must assume a portion of ISC's liability.[4] We accept neither.

ISC's argument that an award for anthraco-silicosis may be made here under the Compensation Act is without merit. Before an occupational disease may be the basis for compensation under that statute, the requirements of Section 301 (c)(2), 77 P.S. §411(2)[5]

---

[4] *See* Section 308 of the Disease Act, 77 P.S. §1408, and Section 305.1 of the Compensation Act, 77 P.S. §411.1.

[5] Section 301(c)(2) provides:

(2) The terms 'injury,' 'personal injury,' and 'injury arising in the course of his employment,' as used in this act, shall include, unless the context clearly requires otherwise, occupational disease as defined in section 108 of this act: Provided, That whenever occupational disease is the basis for compensation, for disability or death under this act, it shall apply only to disability or death resulting from such disease and occurring within three hundred weeks after the last date of employment in an occupation or industry to which he was exposed to hazards of such disease: And provided further, That if the employe's compensable disability has occurred within such period, his subsequent death as a result of the disease shall likewise be compensable. *The provisions of this paragraph (2) shall apply only with respect to the disability or death of an employe which results in whole or in part from the employe's exposure to the hazard of occupational disease after June 30, 1973* in employment covered by The Pennsylvania Workmen's Compensation Act. The employer liable for compensation provided by section 305.1 or section 108, subsections (k), (l),

must be satisfied. That section requires that the disability must arise in whole or in part from exposure to the hazard of an occupational disease occurring after June 30, 1973. While it is true that claimant's disability arose in part from exposure to the hazard of a coal dust disease, the claimant was not exposed to a coal dust hazard after June 30, 1973.[6] Accordingly, the requirements of Section 301(c)(2) have not been met, and an award under the Compensation Act would be improper.

---

(m), (o), (p) or (q), shall be the employer in whose employment the employe was last exposed for a period of not less than one year to the hazard of the occupational disease claimed. In the event the employe did not work in an exposure at least one year for any employer during the three hundred week period prior to disability or death, the employer liable for the compensation shall be that employer giving the longest period of employment in which the employe was exposed to the hazards of the disease claimed. (Emphasis added.)

[6] The referee's eighth and ninth findings of fact were:

8. During his employment as an arc welder from July 1, 1973 through January 7, 1974 the claimant was exposed to a minute quantity of coal dust which did not constitute a hazard or contribute to his disabling respiratory diseases.

9. On October 21, 1974 the claimant became permanently and totally disabled due to pneumoconiosis; namely, anthraco-silicosis, and arc welder's pneumoconiosis and said disability resulted from his total and cumulative exposure to coal and other noxious dusts during his employment in the mining industry and his total and cumulative exposure to noxious dusts, fumes and smoke during his employment as an arc welder including the period from July 1, 1973 through January 7, 1974, inclusive.

It is contended that these findings are inconsistent insofar as they deal with a noncontributory coal dust exposure after June 30, 1973. We need not pass on such inconsistency because, even if the error is found to exist, it is harmless. An award for anthraco-silicosis is clearly improper under the Compensation Act, regardless of whether exposure to coal dust contributed to claimant's condition, because the exposure did not constitute a hazard.

On the other hand, an award for exposure to the hazard of arc welder's pneumoconiosis is sustainable. The claimant's disability arose in part from his total and cumulative exposure to a disease related to arc welding. The claimant had worked continuously as an arc welder since about 1954, including the period from 1969 to October 1973 during which claimant worked for ISC. Obviously, the claimant's exposure while employed by ISC continued beyond June 30, 1973 and comprised a portion of his total and cumulative exposure as an arc welder.[7] Thus, the requirements of Section 301(c)(2) have been met, and an award for arc welder's pneumoconiosis under the Compensation Act against ISC is proper.

The instant award may be sustained solely on the basis of claimant's exposure to the hazard of arc welder's pneumoconiosis. Simply stated, ISC is solely liable for claimant's total disability because it subjected him to a hazard which contributed to that disability. Such a statement takes into account the current state of medical science, which cannot apportion an insidious disease such as pneumoconiosis among its several causative factors, and the liberal interpretation due statutes such as the Compensation Act which are remedial in nature.

ISC appears to argue further that if an award for anthraco-silicosis cannot be made under the Compensation Act, then it should be made under the Disease Act. ISC notes that the claimant originally petitioned under the Disease Act and suggests that the petition was never adequately amended so as to claim benefits under the Compensation Act. This argument lacks foundation.

Pennsylvania victims of occupational diseases may claim benefits under either the Compensation Act, the

[7] *See Klebick v. Commonwealth of Pennsylvania*, 19 Pa. Commonwealth Ct. 499, 338 A.2d 758 (1975).

Disease Act, or under both in the alternative,[8] but in all events the choice lies with the claimant. The referee and the Board are bound by the claimant's choice, and neither may unilaterally change a claim under one statute to a claim under the other statute.[9] Moreover, the claimant has the power to amend his petition so as to claim benefits under the other statute and, when properly made, such an amendment also binds the referee and the Board. Amendments to claim petitions have always been liberally allowed.[10]

In the instant case, claimant's amendment is binding if properly made. We hold that when, early in the proceedings before the referee, claimant's counsel moved to amend the claim petition, the amendment was properly made. Thus the claimant's counsel's motion to amend the petition so as to claim benefits under Section 108(q) bound the referee and the Board to deal with the claim under the Compensation Act and precluded any consideration of the Disease Act. We do not consider absence of the words "Workmen's Compensation Act" from the counsel's motion serious enough to invalidate the amendment in the face of ample evidence on the record that all parties understood the amended claim to be under that act. Furthermore, we do not consider the referee's actions of informing the claimant of his rights under the respective statutes inappropriate.

ISC also attacks the award under the Compensation Act, alleging that it was not afforded timely notice of claimant's disability. It is argued that the notice afforded in late 1974 was untimely as not being within the 120-day limitation of Section 311 of the

---

[8] Section 444 of the Compensation Act, 77 P.S. §1000.

[9] See, e.g., Workmen's Compensation Appeal Board v. Wlodarczyk, 21 Pa. Commonwealth Ct. 495, 347 A.2d 763 (1975).

[10] Id. at 498 n. 6, 347 A.2d at 765 n. 6.

Compensation Act, 77 P.S. §631, because the claimant knew or should have known he was disabled in 1973.

ISC's argument is unpersuasive. An individual is not disabled within the liberally construed meaning of Section 311 until he is disabled and either knows or should know through the exercise of reasonable diligence of the existence of the disability and its possible relationship to his employment. After seeking medical advice from several sources, claimant here was finally advised in October 1974 that he was *totally and permanently* disabled by the pneumoconiosis. Accordingly, the 120-day limitation began to run at this point and not sometime in 1973.

Having found no merit in ISC's contentions, we enter the following

### ORDER

AND Now, this 5th day of January, 1977, the appeal of Industrial Services Contracting, Inc., is hereby dismissed, and the order of the Workmen's Compensation Appeal Board dated January 22, 1976 is affirmed. Accordingly, it is ordered that judgment be entered in favor of John R. Wilson and against Industrial Services Contracting, Inc., and Liberty Mutual Insurance Company, in the amount of $100 per week, beginning October 21, 1974 and continuing until such time as disability changes in nature or extent or ceases and terminates, together with interest at the rate of 10 percent per annum on deferred payments of compensation from the date due to the date paid, all within the terms and limits of The Pennsylvania Workmen's Compensation Act.

In addition, Industrial Services Contracting, Inc., is hereby directed to pay the following reasonable costs of the impartial physician, Dr. C. Charles Iannuzzi, in accordance with its agreement to do so:

| | |
|---|---:|
| History and physical | $ 40.00 |
| X-rays and tests | 95.00 |
| Report and testimony | 115.00 |
| Total costs | $250.00 |

Industrial Services Contracting, Inc., is directed to pay approved attorney's fees of $1200 directly to C. Jerome Moschetta from the deferred compensation due the claimant. All remaining compensation and interest is to be paid directly to John R. Wilson.