Shenango Steel Corporation, Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Charles O. Wright, Respondents.

4

Argued May 7, 1979, before Judges WILKINSON, JR., DISALLE and MACPHAIL, sitting as a panel of three.

*Stuart W. Benson, III,* with him *Brandt, Milnes, Rea & Malone,* for petitioner.

*Edwin H. Beachler,* with him *McArdle, Caroselli, Spagnolli & Beachler,* for respondent.

OPINION BY JUDGE MACPHAIL, September 14, 1979:

Petitioner Shenango Steel Corporation (Shenango) appeals to this Court from an order of the Workmen's Compensation Appeal Board (Board) affirming a referee's award of workmen's compensation benefits to Charles O. Wright (Wright). Wright initially sought workmen's compensation benefits pursuant to Section 306(a) of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §511, alleging that he was totally and permanently disabled due to silicosis, pulmonary emphysema, and asthmatic bronchitis contracted while he was employed by Shenango. Shenango does not dispute that Wright is totally and permanently disabled or that his disability resulted from exposure to a silica hazard during the course of his employment with Shenango. The only issue raised by Shenango is whether the order of the Board should be reversed and Wright's claim petition dismissed because Wright failed to give timely notice of his occupational disease to Shenango as required by Section 311 of the Act, 77 P.S. §631. We agree with the referee and the Board that Wright's notice to Shenango was timely and, accordingly, we affirm.

Our scope of review in a case of this type was recently summarized by our Supreme Court in *Katz v. Evening Bulletin,* Pa. , , 403 A.2d 518, 519 (1979):

> Whether notice has been given is a question of fact. . . . The referee is the ultimate factfinder where, as here, the appeals board takes no additional evidence. . . . And the facts found by the referee are binding on reviewing courts. . . . The referee found that the employer received adequate notice. . . . Thus, we are limited to an examination of whether there is competent, substantial evidence in the record to support

the fact-finder's determination. (Citations omitted.)

Of course, questions of credibility and the resolution of conflicting testimony are matters to be determined by the referee and not this Court. The referee may accept or reject the testimony of any witness in whole or in part and "If the testimony accepted constitutes such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . we are precluded from disturbing findings supported by the testimony even though there is evidence to the contrary." (Citation omitted.) *American Refrigerator Equipment Co. v. Workmen's Compensation Appeal Board,* 31 Pa. Commonwealth Ct. 590, 595, 377 A.2d 1007, 1010 (1977). The party who prevails below is entitled to the benefit of the most favorable inferences to be drawn from the evidence on appeal. *Id.*

With these principles in mind, we turn to the case before us. Timely notice to claimant's employer is a mandatory requirement of a workmen's compensation claim. *Workmen's Compensation Appeal Board v. Czepurnyj,* 20 Pa. Commonwealth Ct. 305, 308, 340 A.2d 915, 917 (1975). The notice requirements as set forth in Section 311 of the Act, 77 P.S. §631, provide that:

Unless the employer shall have knowledge of the occurrence of the injury, or unless the employe or someone in his behalf, or some of the dependents or someone in their behalf, shall give notice thereof to the employer within twenty-one days after the injury, no compensation shall be due until such notice be given, and, unless such notice be given within one hundred and twenty days after the occurrence of the injury, no compensation shall be allowed. *However, in cases of injury result-*

*ing from ionizing radiation or any other cause in which the nature of the injury or its relationship to the employment is not known to the employe, the time for giving notice shall not begin to run until the employe knows, or by the exercise of reasonable diligence should know, of the existence of the injury and its possible relationship to his employment.* The term 'injury' in this section means, in cases of occupational disease, disability resulting from occupational disease. (Emphasis added.)

For the purposes of Section 311, then, the computation of time for giving notice of an occupational disease runs from the date that a claimant (1) is disabled and (2) knows or should know through the exercise of reasonable diligence that he or she is disabled and that the disability is possibly related to his or her employment. *Industrial Services Contracting, Inc. v. Wilson,* 28 Pa. Commonwealth Ct. 83, 91, 367 A.2d 377, 381 (1977). There is no question here that Wright was disabled. A question does arise, however, over when Wright knew or should have known of his disability and of its possible relationship to his employment.

Wright had worked for Shenango from 1955 until February, 1974 when he suffered a heart attack. When Wright was discharged from the hospital following his heart attack, the diagnosis of his condition was acute anterior myocardial infarction due to arteriosclerotic heart disease, chronic bronchitis, type 4, Lipoprotein phenotype, chronic bronchitis, and asthma. There was no mention in the discharge order of any chronic obstructive lung disease. Over the next year, Wright's treating physicians, Dr. Tichworth and Dr. Corpuz, completed sickness and accident reports on behalf of Wright in which they stated that his condition was due to acute arterio-

myocardial infarction and not to injury or illness related to his employment.

On February 21, 1975, Dr. Corpuz conducted pulmonary function studies on Wright. By way of deposition, Dr. Corpuz testified that these studies showed that Wright had a moderate degree of restrictive and obstructive disease consistent with pneumonconiosis and that Wright's condition was related to his occupation. Dr. Corpuz further testified that in a five to ten minute telephone conversation occurring approximately a week after the pulmonary function studies, he informed Wright of the results of the studies. The telephone conversation was not noted in Dr. Corpuz's file on Wright. On cross-examination, Dr. Corpuz testified that in February, 1975, he concurred in Wright's desire to apply for disability because his combined cardiac and pulmonary conditions would no longer permit him to work. Throughout cross-examination and recross-examination Dr. Corpuz repeatedly stated that Wright's disability was due to combined cardiac and pulmonary conditions. Dr. Corpuz further testified that he did not recall explaining to Wright that his pulmonary condition resulted from his employment.

Wright testified that over a five year period he was increasingly bothered by difficulties in his breathing and that on April 10, 1976 he was examined by Dr. J. D. Silverman in relation to his breathing problems. It was on that date, he said, that he first learned that he was possibly suffering from an occupational disease. He also testified that never before that date had he been treated for any lung condition nor had he been told when he was discharged from the hospital that he had chronic bronchitis.

On April 13, 1976, Wright sent notice to Shenango that he was "totally and permanently disabled as a result of the presumed occupational related pulmon-

ary pathology.'' Shenango argues that this notice was untimely because Wright knew or should have known of the possibility that he was disabled due to an occupational disease following his telephone conversation with Dr. Corpuz in February, 1975. Wright argues that since he neither knew nor should have known of the possibility that he was disabled because of an occupational disease until April 10, 1976, his notice to Shenango was timely.

The referee chose to resolve the conflict in the testimony as presented by Dr. Corpuz and Wright in favor of Wright. He found Dr. Corpuz's testimony to be insufficient to overcome Wright's unequivocal testimony that he was unaware until April 10, 1976 that he was possibly suffering from a work-related disability. The referee determined, therefore, that the date from which the notice requirements was to be calculated was April 10, 1976.

Our review of the record reveals that the referee's determination was supported by substantial evidence. We, therefore, affirm the order of the Board affirming the referee's decision to grant Workmen's Compensation benefits to Wright.

### ORDER

AND Now, this 14th day of September, 1979, the Order of the Workmen's Compensation Appeal Board at A-74196 dated April 27, 1978, is affirmed and it is ordered that judgment be entered in favor of Charles O. Wright, claimant, and against Shenango Steel Corporation, employer. The employer and/or its insurance carrier shall pay compensation due and owing to the claimant Charles O. Wright at the rate of $106.00 per week commencing April 10, 1976 and continuing indefinitely thereafter within the limitations of the Workmen's Compensation Act and shall reimburse claimant's counsel in the amount of $157.80 for the costs of prosecution.

All compensation due and owing shall bear interest at the rate of 10% per annum.

The employer and/or its insurance carrier is also directed to pay the claimant's attorney's fees in the amount of $2,204.80, representing 20% of the benefits for the first two years. The employer and/or its insurance carrier is directed to deduct $21.20 from each week of compensation that becomes due and payable to claimant during the period commencing April 10, 1976 and continuing for two years thereafter and to forward it directly to: Thomas W. Henderson, Esquire, 1100 Law & Finance Building, Pittsburgh, Pennsylvania, 15219.