Bud Smail Lincoln Mercury and Universal Underwriters Insurance Company, Petitioners *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Thomas A. Sipes, Respondents. Transamerica Insurance Company, Intervenor.

Argued April 8, 1981, before President Judge CRUMLISH and Judges BLATT and MACPHAIL, sitting as a panel of three.

*Francis E. Pipak, Jr.,* with him *Fred C. Trenor* and *Mark Gordon, Meyer, Darragh, Buckler, Bebenek & Eck,* for petitioners.

*Joseph F. Grochmal,* with him *Roy F. Walters, Jr., Fried, Kane, Walters & Zuschlag,* for intervenor.

No appearance for respondents.

OPINION BY JUDGE MACPHAIL, June 11, 1981:

This is an appeal by Bud Smail Lincoln Mercury (Smail) and Universal Underwriters Insurance Company (Universal) from an order of the Workmen's Compensation Appeal Board (Board) affirming a referee's decision directing Universal to pay workmen's compensation benefits to Thomas A. Sipes (Sipes).

Sipes was employed as an automobile mechanic for Smail. On July 27, 1973, Sipes was injured when

an automobile engine on which he was working exploded, causing him to strike his back against a wall. As a result of this incident, Sipes sustained an injury to his lower back. He was paid compensation benefits by Transamerica Insurance Company (Transamerica), Smail's workmen's compensation insurer on July 27, 1973, from July 28, 1973 through November 1, 1973, when he returned to work for Smail. Sipes executed a final receipt with Transamerica on November 7, 1973.

On March 10, 1975, Sipes was bending over the fender of a car in the course of his employment at Smail's garage when he experienced severe back pain and was unable to stand upright. As a result of this incident he underwent surgery for removal of an L-5 disc protrusion. He returned to work on October 2, 1975. At the time of the second incident, Universal provided workmen's compensation coverage for Smail. Sipes filed a claim for workmen's compensation benefits against Smail and listed both Transamerica and Universal as insurance carriers.[1] Both companies denied liability.

There is no dispute that Sipes was disabled by a work-related injury on March 10, 1975. The only issue presented to the referee was whether what occurred on March 10, 1975 was a new injury for which Universal would be financially responsible or the recurrence of an old injury for which Transamerica would be financially responsible.[2] The referee twice decided that Sipes suffered a new injury thus mak-

---

[1] On his claim petition, Sipes set forth that the date of injury was "July 27, 1973 (recurrence 3/10/75)."

[2] Counsel for Transamerica suggested that Sipes' claim petition should be treated as a petition to set aside a final receipt under the provisions of Section 434 of the Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §1001.

ing Universal liable for Sipes' workmen's compensation benefits. The Board twice affirmed the referee's decision.

In its appeal to this Court, Universal contends that (1) the referee capriciously disregarded competent evidence that Sipes sustained a recurrence of his old back injury on March 10, 1975, (2) there was insufficient substantial evidence to support a finding that Sipes sustained a new injury on March 10, 1975, and (3) the referee erred when he did not set aside the final receipt executed by Sipes.

The referee's critical findings of fact are:

. 3. On March 10, 1975 claimant slipped, felt pain and injured his back as a result thereof.

4. Claimant's back was in a weakened condition as a result of the injury of July 27, 1973, but he had been symptom-free since the date of signing the Final Receipt.

5. Claimant's original injury on November 7, 1973 [sic] resulted in disability to the L-4 disc.

6. As a result of the injury of March 10, 1975, claimant sustained injury to the L-5 disc.

7. The injury of March 10, 1975 was as the result of a new injury to a back that was in a weakened condition.

This Court has consistently reiterated that in workmen's compensation cases, questions of credibility and the choice between conflicting testimony including such as may arise from a witness' inconsistent testimony are for the referee, not the reviewing court. *Republic Steel Corp. v. Workmen's Compensation Appeal Board,* 49 Pa. Commonwealth Ct. 29, 409 A.2d 1385 (1980). The referee may accept or reject the testimony of a witness in whole or in part. *Shenango Steel Corp. v. Workmen's Compensation Appeal Board,* 46 Pa. Commonwealth Ct. 3, 405 A.2d

1086 (1979). A capricious disregard of evidence constitutes a willful and deliberate overlooking of competent testimony and relevant evidence which one of ordinary intelligence could not possibly have avoided in reaching the result. *Workmen's Compensation Appeal Board v. Philco Ford Corp.*, 27 Pa. Commonwealth Ct. 298, 366 A.2d 620 (1976). Evidence is substantial if a reasonable man acting in a reasonable fashion could have used it in arriving at a pertinent decision. *Acitelli v. Westmont Hilltop School District*, 15 Pa. Commonwealth Ct. 214, 325 A.2d 490 (1974).

There is a definite conflict in the evidence as to whether Sipes slipped and injured his back as a result thereof on March 10, 1975. Sipes testified that he did not slip but was merely bending over the fender of a car when he felt pain in his back and had difficulty "straightening up." He was then cross-examined concerning a telephone conversation he had with a representative of Transamerica on April 3, 1975. He admitted that he may have told the insurance representative that he slipped but he was not sure whether he said that or not. He also could not specifically deny that he told the insurance representative that his supervisor, a Mr. Hartman, witnessed the occurrence although Sipes' testimony was to the effect that he did not know if Hartman had seen what happened or not.[3] While we may have made a different finding with respect to this evidence, we cannot say that there was no substantial evidence to support the referee's finding nor can we say that any evidence was capriciously disregarded. To be sure, some evi-

---

[3] Although Hartman was present at the hearing, he did not testify. At the conclusion of the hearing, the referee directed a question to Hartman, "Are you going to testify to the same thing that he (Sipes) just testified to?" The attorney for Universal replied, "It's the same testimony."

dence had to be rejected but this was the proper function of the referee.

Concerning the referee's finding that Sipes was "symptom-free" since July 27, 1973, Sipes testified that he always had a "slight discomfort" and that he went to his chiropractor "once in a while" for treatment. On the other hand, Sipes admitted that he had worked every day since July 1, 1973 at his regular job and had not seen his treating physician, Dr. Yanchus, during that period of time. Again, we are unable to say that the referee capriciously disregarded evidence. Rather he weighed substantial evidence against Universal.

There is no dispute that Sipes' injury on March 10, 1975 was to the L-5 disc. Neither is there any dispute that Dr. Yanchus diagnosed the original injury as an L-4 disc injury. The doctor took x-rays in 1973 but did not do a myelogram. The doctor said that he probably should not have localized his diagnosis of the July 27, 1973 injury as an L-4 disc injury because a myelogram may have shown it to be L-5. Nevertheless, the doctor did diagnose the original injury as being the L-4 disc and he did not say at any time that it was, in fact, an injury to the L-5 disc. His testimony was only, "It could have been." Again, the referee determined the weight to be attached to the doctor's testimony and his finding of an L-4 disc injury on July 27, 1973 is supported by substantial evidence.

Finally, there is no dispute that Sipes' back was in a weakened condition on March 10, 1975. Nevertheless, under the definition of "injury" found in Section 301(c) of the Act, 77 P.S. §411, where a worker with a previous physical condition aggravates that previous condition in a work-related accident, he sustains a compensable "injury" within the meaning of that term as it is used in the Act. Although Dr.

Yanchus insisted that Sipes' disability on March 10, 1975 was the result of his original injury, he also testified that Sipes second injury would have occurred had there been any amount of force, however slight, such as a sneeze. In his own words the doctor said, "It can be detonated at any time with a trivial cause." In the case now before us, the referee found that cause to be Sipes' slipping while bending over a car fender. That is sufficient to constitute a new "injury" which aggravated Sipes' previous physical condition.

We need not discuss the referee's alleged error in not setting aside the final receipt because he would be powerless to do so unless he first found as a fact that the March 10, 1975 incident was merely a recurrence of the original injury.

In view of the fact that Universal has already complied with the referee's order of June 10, 1976 to pay Sipes compensation at the rate of $114.00 per week beginning March 10, 1975 to July 1, 1975 and at a rate of $171.00 per week from July 1, 1975 to October 2, 1975, we deem it unnecessary to enter judgment in the usual form.[4]

Order affirmed.

ORDER

AND Now, this 11th day of June, 1981, the Order of the Workmen's Compensation Appeal Board dated

---

[4] At the rehearing ordered by the Board following the referee's decision of May 11, 1976, no testimony was taken but counsel for both insurance companies presented memoranda of law. In the memorandum from Universal it was reported that it was necessary for Sipes to undergo further back surgery for removal of an L-4 disc protrusion. At that time Universal entered a supplemental agreement with Sipes to pay him $171.00 per week until terminated according to the provisions of the Act. The question of liability for the payments made under that supplemental agreement are not before the Court at this time.

March 6, 1980 affirming a referee's decision directing Universal Underwriters Insurance Company to pay workmen's compensation benefits to Thomas A. Sipes at a rate of $114.00 per week from March 10, 1975 to July 1, 1975 and at a rate of $171.00 per week from July 1, 1975 to October 2, 1975 is hereby affirmed. Claimant was not represented by counsel and no attorney's fees are payable.