Agnes V. Blair, Petitioner *v.* Workmen's Compensation Appeal Board (Fullington Bus Company), Respondents.

Submitted on briefs January 30, 1984, to Judges ROGERS, CRAIG and COLINS, sitting as a panel of three.

*Agnes V. Blair,* for herself, petitioner.

*Jeams M. Horne, McQuaide, Blasko, Schwartz, Fleming & Faulkner, Inc.,* for respondents.

OPINION BY JUDGE CRAIG, February 27, 1984:

Agnes Blair, pro se, appeals an order by the Workmen's Compensation Appeal Board which, in affirming a referee's decision, terminated her benefits, but also ordered her employer and its insurance carrier, to pay Ms. Blair compensation which they had unilaterally suspended after she did not appear for a physical examination.

We must decide if substantial evidence of record supports the referee's finding that Ms. Blair is no longer disabled because of a work-related injury[1] and if section 314 of The Pennsylvania Workmen's Compensation Act[2] authorized the employer to suspend her

---

[1] In a termination proceeding, the employer bears the burden of proving that the claimant's disability has ceased or is no longer the result of the injury sustained in the course of employment. *Everett v. Workmen's Compensation Appeal Board,* 67 Pa. Commonwealth Ct. 459, 447 A.2d 700 (1982). Where, as here, the party with the burden of proof has prevailed below, we limit our scope of review to determining whether there is a violation of constitutional rights or an error of law, or whether substantial evidence supports the findings of fact. *Id.* Questions concerning the credibility of witnesses, the resolution of conflcts in testimony, and weight of evidence are for the referee and not this court. *Shenango Steel Corp. v. Workmen's Compensation Appeal Board,* 46 Pa. Commonwealth Ct. 3, 405 A.2d 1086 (1979).

[2] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §651.

benefits for non-compliance with a board order to submit to medical examination.[3]

Ms. Blair was a bus maintenance worker at Fullington Bus Company when, on December 1, 1979, she experienced a bout of cellulitis which incapacitated her. Ms. Blair testified that her personal physician had informed her that she also suffered from hypertension and congestive heart failure. On February 20, 1980, the parties entered into a Notice of Compensation Payable.

After Ms. Blair failed to appear for three Fullington-scheduled physical examinations in 1980, Fullington obtained a board order dated September 26, 1980, mandating that she appear for an examination.

Because Ms. Blair did not comply with that order, Fullington filed a petition for suspension of benefits and suspended payments beginning October 27, 1980. Ms. Blair did not file an answer to the suspension petition but did request that hearings set for December, January and February be postponed.

On April 7, 1981, the referee held a hearing on the suspension petition and ordered Ms. Blair to appear for a physical examination. On April 24, 1981, Dr. A.

---

[3] Section 314 provides in pertinent part:

At any time after an injury the employe, if so requested by his employer, must submit himself for examination, at some reasonable time and place, to a physician or physicians legally authorized to practice under the laws of such place, who shall be selected and paid by the employer. If the employe shall refuse upon the request of the employer, to submit to the examination by the physician or physicians selected by the employer, the board may, upon petition of the employer, order the employe to submit to an examination at a time and place set by it, and by the physician or physicians selected and paid by the employer, or by a physician or physicians designated by it and paid by the employer.

Reid Allison, board-certified in internal medicine, examined her and, in a letter apparently admitted into evidence at a second hearing in June of 1981, stated that "it would be difficult for me, if not impossible, to state that her cardiac abnormalities are a direct result of employment with Fullington...."

On the basis of Dr. Allison's letter, Fullington's counsel asked the referee to treat the suspension petition as one for termination and requested a discretionary supersedeas. We have nothing in the record to indicate that the referee granted the supersedeas.

On September 22, 1981, the parties deposed Dr. Allison. He said that he did not "think that the cardiac abnormalities were the result of employment ...," saw only "perhaps a trace ... of a flare-up of cellulitis ...," and concluded that "in his professional opinion ... there was nothing here to suggest any occupationally related disease."

At a third hearing on January 26, 1982, the referee admitted Dr. Allison's deposition into evidence. Ms. Blair did not offer any medical testimony or evidence, despite the referee's repeated suggestions that she do so.

Treating the suspension petition as one for termination, the referee accepted Dr. Allison's testimony as credible, finding that Ms. Blair's work-related disability had ceased and that any pain, discomfort, or disability was the result of the natural aging process. He ordered Fullington to terminate payments as of April 24, 1981.

On appeal to the board, Ms. Blair submitted that her disability continued to be work-related and that Fullington should not have suspended her compensation payments from October 1980 to April 1981. Fullington appealed on the basis that it had properly suspended benefits under section 314 and that the ref-

eree erred by ordering it to pay compensation until April of 1981.

The board affirmed. Noting, however, that the record was "confusing as to when . . . [Fullington] stopped paying compensation," the board presumed that the company had continued payment until April of 1981 and that it was seeking recoupment.

We affirm the termination decision. Dr. Allison's testimony amply supported the referee's findings that Ms. Blair's heart ailments, although disabling, were unrelated to her work and that her cellulitis was no longer disabling.

We must disagree, however, with the board's observation that the record does not reveal clearly when Fullington suspended payments. At every stage of these proceedings, the company has acknowledged that it had unilaterally suspended benefits between October 27, 1980 and April 24, 1981, citing section 314 as authority for its position.

Section 314 provides, in pertinent part, that, in the event of a "refusal or neglect, *without reasonable cause or excuse,* of the employee to submit to such examination ordered by the board," the period of such refusal or neglect "shall be deducted" from the period during which compensation would otherwise be payable (emphasis added).

Although section 314 is not free of ambiguity, we believe that the legislature intended that a referee, not an employer, determine if an employee had reasonable cause or excuse for not submitting to a board-ordered examination. Thus, only a referee can deduct compensation under section 314.

In her brief, Ms. Blair submits that, among other things, she was too ill to travel when the board ordered her to submit to a physical examination. In Finding of Fact No. 2, the referee found only that Ms. Blair had "neglected, failed and refused to comply"

464

with the board's order, but made no finding on the critical issue of whether she had reasonable cause or excuse to disregard it.

Accordingly, we will remand this case to the referee. If he finds that Ms. Blair had reasonable cause or excuse to disregard the board's order, then Fullington must remit to Ms. Blair the amount of compensation unilaterally withheld from October 1980 to April 1981.

### Order

Now, February 27, 1984, the order of the Workmen's Compensation Appeal Board, No. A-83294, dated November 12, 1982, is affirmed insofar as that order terminates the benefits of Agnes V. Blair. This case is also remanded to the board with instructions that the board or referee determine if Agnes V. Blair had reasonable cause or excuse to disregard the board's physical examination order of September 26, 1980.

Jurisdiction relinquished.