543 A.2d 241

Adams Steel Erection, Inc., Petitioner *v.* Workmen's Compensation Appeal Board (Klavonick), Respondents.

Argued March 21, 1988, before Judges CRAIG and SMITH, and Senior Judge NARICK, sitting as a panel of three.

*Edward D. Klym,* with him, *David H. Trushel* & *Associates,* for petitioner.

*Amiel B. Caramanna, Jr.,* with him, *Alexander J. Pentecost,* for respondent, Charles Klavonick.

OPINION BY JUDGE CRAIG, June 24, 1988:

Adams Steel Erection (Adams) appeals an order of the Workmen's Compensation Appeal Board which affirmed a referee's decision awarding compensation benefits to Charles Klavonick under section 108(n) of the Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §27.1(n).[1] We affirm.

---

[1] Occupational disease is defined in section 108(n) as:

(n) All other diseases

(1) to which the claimant is exposed by reason of his employment, and (2) which are causally related to the industry or occupation, and (3) the incidence of which is substantially greater in that industry or occupation than in the general population. For the purposes of this clause,

The claimant worked as an iron worker in the welding industry for various employers from June, 1947 until November 12, 1982. The claimant worked for Adams during the months of July, August and September of 1976, and also during October and November of 1982 as an erector. In the performance of his duties as an iron worker, the claimant spent 90% of his time as an electric arc welder and 10% of his time with a cutting torch. At Adams Steel the claimant worked as an erector using wrenches and a sledge to "vertical" columns. The claimant worked indoors and outdoors, and his position entailed a great deal of climbing near coke plants and similar installations, during which time exposure to gas and fumes occurred.

Approximately three years before his retirement, and during his employment with Adams, the claimant began experiencing shortness of breath and difficulty in climbing and lifting.

The claimant applied for benefits. At hearings before a referee, evidence from a pulmonary disease physician indicated that the claimant was disabled by mixed dust pneumoconiosis, primarily arc welder's pneumoconiosis.

The referee made the following factual finding:

TENTH: The referee finds as a fact, based on all the evidence received, both medical and lay, that the claimant's testimony relative to his exposures in his employment history is credible testimony. This Referee also finds as a fact that the claimant is partially disabled from mixed dust pneumoconiosis that is a result of his exposures to various dusts while in the employ of various employers throughout his employment

partial loss of hearing in one or both ears due to noise; and the diseases silicosis, anthraco-silicosis and coal workers' pneumoconiosis resulting from employment in and around a coal mine, shall not be considered occupational diseases.

history, that the claimant .cannot return to his duties as an arc welder in the profession of an iron worker and that there are no duties that the defendants have shown that the claimant could perform with his disability and educational background and in labor· market area. This Referee makes this finding based on the more credible testimony of the claimant's medical witness, Dr. J. D. Silverman, as well as the credible testimony of the claimant himself.

On the basis of the testimony, the referee awarded the claimant disability benefits for an occupational disease as defined in section 108(n) of the Act. The board affirmed, and Adams appealed.

Our scope of review in an appeal from the board is limited to determining whether an error of law was committed, constitutional rights were violated, or whether there was substantial evidence in the record to support such factual findings. *Kirkwood v. Unemployment Compensation Board of Review*, 106 Pa. Commonwealth Ct. 92, 525 A.2d 841 (1987).

Adams initially contends that no substantial evidence exists to support a finding that the claimant was exposed to any hazard in his employment with Adams. Adams also asserts that an unqualified imposition of liability on the last employer is a denial of due process.

In *Fruehauf Corp., Independent Metal Division v. Workmen's Compensation Appeal Board (Cornell)*, 31 Pa. Commonwealth Ct. 341, 345-48, 376 A.2d 277, 279-80 (1977), this court stated that, in order to receive benefits under 108(n), a claimant must satisfy three criteria:

First, it requires that a claimant be exposed to a disease by reason of his employment. Stated differently, a claimant must show that the occupational disease is a hazard of his employment and

that he was exposed to it. *To satisfy this requirement, a claimant may reasonably identify or describe the causative factors of the disease, demonstrate that the factors are significantly present in his employment, and show that he was exposed to this significant presence.*

The claimant must also demonstrate that the disease is causally related to the industry or occupation and that the incidence of the disease is substantially greater in the industry or occupation than in the general population.

(Emphasis added, footnotes omitted.)

We first deal with Adam's assertion that no substantial evidence exists to support a finding that the claimant was exposed to an occupational hazard while employed by Adams Steel. Specifically, Adams contends that there was no testimony supporting the proposition that the claimant's employment was significant enough to cause or aggravate the claimant's disabling condition. Thus Adams questions whether the requirements of 108(n) have been met.

The claimant has sufficiently established that he suffers from arc welder's pneumoconiosis, caused by the inhalation of noxious dusts and fumes, and that the claimant's exposure occurred while employed by Adams.

On direct examination, Dr. Silverman testified:[2]

Q. What is your diagnosis of his pulmonary condition?

A. Diagnosis is pneumoconiosis.

---

[2] Although other medical testimony was offered, the referee in factual finding No. 10 expressly found the testimony of Dr. Silverman more credible. A referee, as factfinder, may accept or reject the testimony of any witness, including a medical witness, in whole or part. *Sell v. Workmen's Compensation Appeal Board,* 62 Pa. Commonwealth Ct. 5, 434 A.2d 904 (1981).

Q. What type of pneumoconiosis would that be?

A. I described it as mixed dust because I felt that he had a variety of exposure and seemed to be simplest way to be all inclusive although in all probability his greatest exposure came as a result of his welding.

On cross-examination the claimant testified:

Q. When you worked in 1982 for Adams Steel Erection could you tell me exactly what your job duties were during that period of time it was about six weeks?

A. To help erect steel.

BY THE REFEREE:

Q. We are talking about the period October, 1982 and November, 1982 which the records show is 126.50 and 67.50 you erected steel?

A. And welded joists—bar joists and decking.

. . . .

Q. About how much of your time during that period of time would you have been welding these bar joints [sic]?

A. Probably half the time.

. . . .

Q. Could you describe it was this outside work?

A. This job was, yes.

Q. It was entirely outside?

A. Yes, it was.

Q. Did you wear any type of respirator or anything like that while you were welding?

A. No sir. Hard to wear a respirator with a welding. You put on your face.

. . . .

Q. Describe to me the condition of the air around you when you were doing that?

A. When you weld of course fumes from the welding rod the coating—the bar joist is coated with a tar like paint and of course it's fumes from the paint mixed with the welding fumes.

The claimant has sufficiently established through expert testimony that mixed dust pneumoconiosis was casually related to his employment in the welding industry, and that the incidence of this occupational disease is substantially greater in that industry than in the public at large. The expert testimony of Dr. Silverman on this point concerning the claimant's exposure includes:

Q. Taking into account the history he gave you together with the results of your examination, tests and treatment of him within a reasonable degree of medical certainty what do you feel the cause of the mixed dust pneumoconiosis was?

A. I feel it was the result of his total and accumulative exposure while working over a period of 35 years. I guess he was classified as an iron worker but basically because of the variety of exposure that he had.

Q. As a result of the mixed dust pneumoconiosis which you relate to his exposure do you feel he would be able to perform his former job as an iron worker which required him to climb heights, to balance, to lift, to bend, to do work involving heavy physical exertion including exposure to kinds of material he mentioned?

A. No.

. . . .

Q. Doctor, is the incidence of mixed dust pneumoconiosis substantially greater in Mr.

Klavonick's occupation as an iron worker than in the general population as a whole?

A. Yes.

Hence, the evidence clearly supports the referee's finding.

Finally, Adams attacks the exclusion of 108(n) from the liability apportionment provisions of 301(c)(2) of the Act,[3] contending that such exclusion is impermissibly burdensome and a denial of due process because the Act thereby holds the last employer liable for a workmen's compensation award in a section 108(n) case without any qualifications as to a minimum or relative period of employment.

Section 301(c)(2) mandates that the "liable employer is that which exposed the claimant for more than one year or more, if such employer exists, 'and if not . . . the employer with the longest period of exposed employment of less than one year's duration' within the 300-week period prior to disability." *Barna v. Workmen's Compensation Appeal Board (Rochester & Pittsburgh Coal Co.)*, 103 Pa. Commonwealth Ct. 536, 541-42, 520 A.2d 1234, 1237 (1987). Because subsection 108(n) is expressly excluded, *Barna* does not apply here; the "last injurious exposure" rule governs.

---

[3] Section 301(c)(2) of the Act states in pertinent part:
The employer liable for compensation provided by section 305.1 or section 108, subsections (k), (l), (m), (o), (p) or (q), shall be the employer in whose employment the employee was last exposed for a period of not less than one year to the hazard of the occupational disease claimed. In the event the employe did not work in an exposure at least one year for any employer during the three hundred week period prior to disability or death, the employer liable for the compensation shall be that employer giving the longest period of employment in which the employe was exposed to the hazards of the disease claimed.

Under the last injurious exposure rule, our court has held that when an employee is disabled or dies from an occupational hazard attributable to successive exposures during his employment, the employer liable will be the last employer responsible for exposure to the hazard.

In *Industrial Services Contracting, Inc. v. Wilson,* 28 Pa. Commonwealth Ct. 83, 367 A.2d 377 (1977), where a doctor testified that the claimant was suffering from both anthracosilicosis and arc welder's pneumoconiosis, this court held that compensation would not be denied because apportionment was not possible between several causative factors, although the employer found liable was chargeable with only one of the factors.

Based on the language of section 301(c)(2) of the Act, and referring to arc welder's pneumoconiosis, we reasoned:

> ISC is solely liable for claimant's total disability because it subjected him to a hazard which contributed to that disability. Such a statement takes into account the current state of medical science, which cannot apportion an insidious disease such as pneumoconiosis among its several causative factors, and the liberal interpretation due statutes such as the Compensation Act which are remedial in nature.

28 Pa. Commonwealth Ct. at 89, 367 A.2d at 380-81. *See also Millcraft Corp. v. Workmen's Compensation Appeal Board (Franko),* 31 Pa. Commonwealth Ct. 322, 376 A.2d 283 (1977).

Section 301(c)(2) provides apportionment for diseases involving long-term causation (silicosis, asbestosis, tuberculosis, diseases of the heart and lungs, byssinosis and coal workers' pneumoconiosis and anthraco-silicosis). The excluded diseases appear to be those not distinctively associated with any long-term exposure causation. The residuary category in subsection 108(n)

is apparently excluded from apportionment because it involves unspecified diseases—hence, those which necessarily are of uncertain nature as to the length of exposure involved. Therefore, the exclusion has a rational basis; given the presumption of validity which we must accord to legislation, no clear violation of either procedural or substantive due process appears.

Accordingly, the decision of the board is affirmed.

ORDER

Now, June 24, 1988, the order of the Workmen's Compensation Appeal Board, dated February 14, 1986, is affirmed.