393 A.2d 1015

Michael E. LANE

v.

Harold T. SCHACHT, Melvin W. Wilson and M & M
Transportation Company, Appellee,

and

Jacoby Transport Systems, Additional Defendant.

Appeal of Harold T. SCHACHT, Melvin W. Wilson,
Jacoby Transport Systems.

Michael E. LANE

v.

QUAKERTOWN TRANSPORT COMPANY,
INCORPORATED, Appellant.

Superior Court of Pennsylvania.

Argued June 20, 1977.

Decided Nov. 3, 1978.

John S. Thome, Jr., Doylestown, for appellants, Schacht and Wilson, at No. 588, and appellant, Quakertown Transport Co., Inc., at No. 589.

Alan Dion, Morrisville, for appellant, Jacoby Transport Systems, at No. 588.

James C. Bowen, Sellersville, for appellee, Michael E. Lane. Frederick Ely Smith, Doylestown, for appellee, M & M Transp. Co.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

These appeals arise from an order of the lower court granting the motion for summary judgment on behalf of M & M Transportation Company (M & M) and denying the summary judgment motions of appellants Harold Schacht (Schacht) and Quakertown Transport Company, Incorporated (Quakertown). We hold the entry of summary judgment on behalf of M & M to be in error, and that the order denying the summary judgment motions of Schacht and Quakertown to be an interlocutory order and not appealable to this court. The facts giving rise to this dispute are as follows.

On September 18, 1974, at approximately 3:30 a. m., plaintiff, Michael E. Lane, was driving east on Route 313 in

Bucks County, when he collided with a tractor-trailer operated by Melvin Wilson. In his deposition, Wilson testified that the collision occurred as he was backing the tractor-trailer into the driveway of his home located on the south side of the two-lane Route 313. He started from the westbound lane and, seeing no traffic approaching, backed his forty-foot trailer across the eastbound lane. When the rear wheels of the trailer entered his driveway, he felt a jerk as the plaintiff's eastbound vehicle struck the underside of the trailer at a 90° angle and emerged from the other side. No other parties were involved in the collision other than Lane and Wilson.

Lane filed a suit in trespass against Schacht and Wilson, who later joined M & M and Jacoby Transport Systems (Jacoby) as additional defendants. Several months later Lane filed a second suit against Quakertown. Both cases were consolidated by stipulation of counsel with court approval. After depositions, Schacht, Quakertown, M & M and Jacoby moved for summary judgment. The principal contention of all was that they could not be held vicariously responsible since Wilson was not under their control at the time of the accident. To understand these contentions it is necessary to expand at length upon the relationships of the various parties.

At the time of the accident on September 18, 1974, the tractor part of the rig being driven by Melvin Wilson was owned by Harold Schacht, while the trailer portion was owned by Quakertown Transport Company. Schacht was a principal shareholder in Quakertown and had leased his tractor to that company. The entire rig (tractor and trailer) was in turn leased to M & M on September 14, 1974, under a long term lease, and M & M affixed its emblems to the sides of the trailer that very day. Although Schacht had leased his tractor to Quakertown, and Quakertown thus retained control of both the tractor and trailer, for some unexplained reason, the lease with M & M listed Schacht as the owner of the rig. The driver, Melvin Wilson, signed the lease on behalf of the owner, an action conceded by all to be within

his authority, and Thomas Powers, the dispatcher for M & M, signed as the agent for that company. The lease agreement did not provide for any monthly or weekly rental, and M & M was only required to pay for the actual use of the vehicle. The actual course of performance between the parties was that M & M paid Wilson directly whenever he made a haul for them, and then sent a check to Quakertown for the use of the rig. On the date that Wilson signed the lease with M & M, he was told by their agent, Thomas Powers, that the division of M & M for which Wilson would be hauling was new and may not have enough work to keep him employed on a full-time basis. Powers promised Wilson to help him find other jobs and said that he would find hauling jobs for Wilson with Jacoby Transport Systems. Powers served as dispatcher for both M & M and Jacoby.

From the date the lease was signed on September 14, 1974, until the accident on September 17, 1974, Wilson did not perform any work on behalf of M & M. On September 17, 1974, Powers called Wilson and informed him that he had a haul for Wilson to make on behalf of Jacoby. Wilson signed a lease contract on that date as the agent for the owner (again, Schacht being listed as the owner) and Powers signed as the agent for Jacoby. Wilson picked up the Jacoby load at 10:00 p. m. on September 17 and delivered it to Allentown, Pennsylvania. Upon his return from the delivery, he was involved in the accident in question at 3:30 a. m. on the morning of September 18. Wilson stated that he drove the rig directly to his home from the Allentown delivery and was going to park it at his home, as was his usual custom.

As mentioned, four of the defendants, Schacht, Quakertown, Jacoby and M & M, moved for summary judgment alleging that they could not be held vicariously responsible because Wilson was not subject to their control at the time of the accident. In addition, all of the defendants, moved for summary judgment alleging that Lane had been contributorily negligent for operating his vehicle in violation of the assured clear distance rule. The court denied all motions

except as to M & M, and ruled that under the above statement of facts, M & M could not be held responsible for the actions of Wilson. Quakertown, Schacht and Jacoby have all appealed. Schacht and Quakertown contend that the trial judge erred in failing to grant their summary judgment motions alleging that Lane had been contributorily negligent, and that they were not responsible for the actions of Melvin Wilson. They also alleged that the trial court erred in granting summary judgment for M & M, a contention that Jacoby has also raised on appeal. On March 11, 1977, Lane filed a petition with this court seeking to quash the appeal of Schacht and Quakertown inasmuch as the order denying summary judgment on the issues of his contributory negligence and the lack of control of Schacht and Quakertown over the actions of Melvin Wilson was an interlocutory order and non-appealable. Thus, the issues for resolution are whether the order denying summary judgment to Schacht and Quakertown is interlocutory, and whether the trial court erred in granting summary judgment on behalf of M & M.

First, as to the appeals of Schacht and Quakertown, under The Appellate Court Jurisdiction Act of 1970,[1] this court has jurisdiction of "all appeals from final orders of the courts of common pleas . . . ."[2] An order is "final" if the effect is to put one of the parties out of court and thus terminate the litigation as to that particular party. *See Bell v. Beneficial Consumer Discount Co.*, 465 Pa. 225, 348 A.2d 734 (1975). The rule in this Commonwealth is that "[a]n order refusing a motion for summary judgment . . . is interlocutory and cannot be appealed until a final order is entered in the cause." *Husak v. Berkel, Inc.*, 234 Pa.Super. 452, 455 n. 1, 341 A.2d 174, 176 n. 1 (1975). In this case, the denial of the summary judgment motion alleging contributory negligence and lack of control is not a final order; the denial does not terminate the action and the case may

1. Act of July 31, 1970, P.L. 673, No. 223, art. I, §§ 101 *et seq.* (17 P.S. §§ 211.101 *et seq.* (Supp.1978).

2. *Id.* at art. III, § 302 (17 P.S. § 211.302) (emphasis added).

proceed to trial where these issues may be adjudicated to a final conclusion. The motion of appellee-Michael Lane to quash the appeals of Schacht and Quakertown is granted inasmuch as those appeals relate to the foregoing issues.

The order granting summary judgment in favor of M & M is, however, a different matter. Because the effect of the order is to terminate the litigation as to M & M, that order is a final order and therefore subject to appeal. *Beneficial Consumer Discount Co., supra; Husak v. Berkel, Inc., supra.* Under Pa.R.C.P. No. 1035(b), summary judgment is to be granted only if "there is no genuine issue as to any material fact and  .  .  .  the moving party is entitled to a judgment as a matter of law." On appeal from the grant of a summary judgment motion this court must review the record in the light most favorable to the appellant. *Speyer, Inc. v. Goodyear Tire & Rubber Co.,* 222 Pa.Super. 261, 295 A.2d 143 (1972).

Applying these rules, we find that the evidence presented raises a "genuine issue" whether, at the time of the accident on September 18, 1974, the driver, Melvin Wilson, was either fully or partially under the control and supervision of the M & M Transportation Company. The lease contract signed on September 14, 1974, between Wilson, as agent for the owner, and Powers, as agent for M & M, provided that the lease was to be for an indefinite duration and that:

"C. During the term of this lease, the leased equipment shall be in the sole and exclusive possession and control of the lessee."

An additional clause in the lease provided that:

"H. The equipment which is the subject of this lease shall be driven by an employee of the LESSEE at all times that it is in the service of the LESSEE  .  .  . .

The LESSEE expressly reserves the right to control the manner, means and details of, and by which the driver of such leased equipment performs his services, as well as the ends to be accomplished  .  .  . ."

The exclusive control provision in these clauses raises a colorable issue regarding the authority of M & M and its responsibility for the actions of Wilson in operating the vehicle.

In its opinion affirming summary judgment for M & M, the court below relied upon two cases decided in other jurisdictions in which the drivers were involved in accidents while driving their vehicles to their homes. In *Pace v. Southern Express Co.*, 409 F.2d 331 (7th Cir. 1969) and *Wilcox v. Transamerican Freight Lines, Inc.*, 371 F.2d 403 (6th Cir. 1967) the evidence established that after making their deliveries, both drivers returned to their employers' terminal, checked out of work and were on their way to their homes when they were involved in the accidents. In both cases, the Courts of Appeals affirmed summary judgments and ruled that the drivers were operating the tractor-trailer rigs for their own purposes and were not in the process of furthering the goals of their employers at the time they were involved in the accidents. In its opinion the court below found the holdings in these cases to be pertinent in interpreting the scope of responsibility of M & M, particularly since the lease in *Pace, supra* contained an exclusive control clause very similar to that in clause C of the lease in the present case. We disagree with this conclusion of the lower court.

In both *Pace* and *Wilcox* summary judgment was deemed proper because the drivers were found to be "off duty" at the time of the accident. In fact, the court in *Pace* held that the exclusive control clause in the lease was of little importance in determining the liability, or lack of it, of the employer. In contrast, since the evidence in this case establishes that the driver, Wilson, was involved in the accident when returning from the Allentown delivery, and always parked the tractor-trailer at his home until instructed to pick up his next load, there is little question that the accident occurred while Wilson was still in the process of furthering the goals of one or more of his employers. Unlike *Pace* and *Wilcox*, the primary question is not whether

Wilson was furthering his own purpose or that of his employers, but instead, the issue is which one or ones among the various employers had the right to control the activities of Wilson at the time of the accident. Indeed, if the decisions in *Pace* and *Wilcox* were controlling, Wilson should have been held to have been acting on his own behalf by driving the tractor-trailer to his own home, and summary judgment should have been entered for all of the other defendants. Since, however, the issue is which among the defendants is responsible, the principles enunciated in *Pace* and *Wilcox* are wholly inapplicable to the facts of this case.

█ In addition to the exclusive control provisions, the lease agreement with M & M further provided that M & M had the right to sub-lease the vehicle, and that during the period of any sub-leasing M & M was to be deemed the owner "for the purpose of any such sub-leasing." In light of the testimony that Thomas Powers served as the agent and dispatcher for both M & M and Jacoby, an issue exists whether the lease arrangement with Jacoby was a sub-lease and whether Melvin Wilson was a borrowed servant. In determining the tort liability for a borrowed servant, the primary test is who, between the lending and borrowing masters, has the right to control the type of work performed and the manner of performance. *Mature v. Anglo*, 373 Pa. 593, 595, 97 A.2d 59, 60 (1953). "[W]hen different inferences can reasonably be drawn from the testimony as to whether the lender or the borrower is the controlling master at the time of the accident, or whether both of them have the right of control, the question is one for the jury." *Siidekum v. Animal Rescue League*, 353 Pa. 408, 413–14, 45 A.2d 59, 62 (1946) (footnote omitted).

Since the testimony established that as of September 14, 1974, M & M retained "sole possession and control" of the vehicle, that M & M had embossed its emblems on the side of the vehicle as of that date, and that on September 18, 1974, both the M & M and Jacoby leases were in effect, there arose a cognizable issue regarding the control by M & M at the time of the accident. Thus, we reverse the entry of

summary judgment on behalf of M & M Transportation Company.

The order granting summary judgment on behalf of M & M Transportation Company is reversed, the motion of Michael Lane to quash the appeals of Harold Schacht and Quakertown Transport Company is granted insofar as the appeals raise the issues of the lack of control over Melvin Wilson and the contributory negligence of Michael Lane and the case is remanded to the lower court for further proceedings consistent with this opinion.

WATKINS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.