## Schulmeister v. Union Township Ambulance

*Robert A. Cohen,* for plaintiff.
*Herman C. Kimpel, Gloria N. Fuehrer,* for defendant.

TERPUTAC, *J.*, May 24, 1984 — On October 6, 1982, the court en banc dismissed the preliminary objections in the nature of a demurrer presented by defendant, holding that the cause of action charging the defendant with negligence was properly brought against a private entity. Based on the allegations in the complaint, the court held since there was nothing on the record at that time to show that the defendant was a municipality, the Municipal Tort Claims Act, the Act of October 5, 1980, P.L. 693, §221 (1), 42 Pa. C.S. §8541, was inapplicable. Additional pleadings were filed and discovery undertaken. Defendant, Union Township Ambulance Service, properly Union Township Volunteer Ambulance Service (hereinafter called Ambulance Service), filed a motion for summary judgment and an amended motion.

In seeking summary judgment, defendant asserts it was created by Union Township, a second class township, to perform "a subordinate governmental function"; accordingly, it is claimed defendant is an agency of the township entitled to immunity under the Municipal Tort Claims Act. Amended motion for summary judgment, paragraph 41. Defendant avers it is entitled to summary judgment because the record does not support a finding of intentional or wanton and wilful misconduct, tortious infliction of emotional distress does not lie, and it is entitled to immunity since the conduct complained of does not fall within any exception of the act. Finally, it claims no contract was ever formed since the dispatcher for the Ambulance Service had no authority to enter into a contract on behalf of the defendant to render the service.

Succinctly stated, the principal question is whether defendant is a legal entity separate and apart from the authority and control of Union Town-

ship. Stated another way, if the Ambulance Service is an agency of the township, then it comes within the protection of the immunity granted to municipalities under the Municipal Tort Claims Act, a situation requiring the court to grant summary judgment.

The fundamental question on a motion for summary judgment is whether there is a genuine issue of material fact. "This severe disposition should only be granted in cases where the right is clear and free from doubt. To determine the absence of a genuine issue of fact, the court must take the view of the evidence most favorable to the non-moving party, and any doubts must be resolved against the entry of judgment." Bowman v. Sears, Roebuck & Co., 245 Pa. Super. 530, 534, 369 A.2d 754, 756 (1976). The moving party has the burden of demonstrating that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Cercone v. Cercone, 254 Pa. Super. 381, 386 A.2d 1 (1978). We are required to review the record, including the affidavits and depositions, in the light most favorable to the non-moving party. Lane v. Schacht, 260 Pa. Super. 68, 393 A.2d 1015 (1978). After a careful review of the record, we hold there are sufficient and genuine issues of material fact raised to preclude the entry of summary judgment.

Prior to his death, decedent and his wife, plaintiff herein, resided in Nottingham Township, Washington County, Pa., Nottingham Township lies adjacent to Union Township and Peters Township, both in Washington County. Defendant is located in Union Township. Affidavits filed by the Ambulance Service state it is prohibited under its by-laws from responding to calls outside Union Township and the Borough of Finleyville. Service is provided to Finleyville residents under a contract with Union

Township. Neither defendant nor Union Township has any contract or mutual aid agreement with Nottingham Township for the rendering of ambulance service. Rather, it is alleged by defendant, service to Nottingham residents is provided by the Peters Township V.F.W. and Tri-County Ambulance Service of Monongahela.

On January 17, 1981, Frank D. Schulmeister became ill and suffered signs of an apparent heart attack. His wife called the family doctor who was not available. After she spoke to the physician's wife, Mrs. Schulmeister related her problem to a neighbor, Norma Cushy, who called defendant's dispatcher. She informed the dispatcher that Mr. Schulmeister was suffering from a heart attack. When the dispatcher told Norma Cushy that an ambulance would be sent out immediately, she informed Mrs. Schulmeister who then called another physician, Dr. Earl Humphrey, who had treated her husband for an ulcer and high blood pressure. Dr. Humphrey advised Mrs. Schulmeister to take her husband by ambulance to Allegheny General Hospital (located in Pittsburgh) where the doctor would be waiting.

After a delay of about 20 minutes, the ambulance having failed to arrive, Mrs. Schulmeister phoned to ask why the ambulance had not been sent for her husband. Defendant's base of operations was about five or seven minutes travel time from the Schulmeister residence. Only at this time was she informed that the Schulmeister home was "out of the jurisdiction" and that no ambulance would be sent. She called another ambulance service. When the ambulance from Peters Township finally arrived, Mr. Schulmeister had suffered cardiac arrest. He was taken by the Peters Township ambulance service to Canonsburg Hospital where he was pro-

nounced dead on arrival. From the time decedent became ill until he arrived at Canonsburg Hospital, two hours had elapsed. On June 5, 1982, plaintiff commenced this action in trespass and assumpsit against defendant, contending the death of her husband was due to the delay on the part of Ambulance Service to render emergency ambulance service when it had agreed to do so.

Defendant's organization was initiated by resolution of the Board of Supervisors of Union Township on March 16, 1976, to provide ambulance service to township residents. The township advanced the sum of $2,300 out of the general fund for operating expenses to defendant; further, the township supplied additional funds for the purchase of equipment. In addition to providing an interest-free loan to Ambulance Service, the Board of Supervisors set the subscription rates and extended liability insurance and workmen's compensation coverage for defendant. Most of the funds which defendant requires come from its own fund-raising activities. The township allows Ambulance Service to use free of rent a building owned by the municipality; it furnishes utilities to defendant.

To enforce its argument that defendant is an agency of the township or that it performs subordinate governmental functions under the protection of the township, defendant asserts it does not hold itself out to everyone in the general public to render the benefits. It claims its service is limited by the geographical area of Union Township and the Borough of Finleyville. At the time of the incident in this case, there was no agreement to render ambulance functions to Nottingham Township residents. In maintaining it is not authorized to render service without the authority of the Board of Supervisors, Ambulance Service relies upon its by-laws to sup-

port its contentions. However, a review of those by-laws does not sustain the contention of the defendant that its activities are limited to the township and the borough.

Article II, Section 3 states:

"This organization shall provide emergency service to the residents of Union Township and *protected areas* and will provide surrounding areas emergency service upon request by mutual-aid agreements with other ambulance services." (Emphasis supplied.) Obviously, the clause does not impose an exclusive service restriction. To this view we look to Article III, Section 1:

"Membership shall consist of residents of Union Township *and surrounding areas.* (Emphasis supplied.) Union Township Volunteer Ambulance Service By-Laws, Exhibit B, Affidavit of James Mazzeo.

To reinforce this contention, defendant says a supervisor of the township, termed a liaison, sits at the meeting of the Ambulance Service. The response to that assertion is that the by-laws do not provide any control over the operations of the defendant by the Board of Supervisors; indeed the liaison person has no right to vote. Article X of By-Laws. Except for the requiring of an annual audit of the defendant's finances and approving the budget, requirements which we believe are designed to protect the investment of the township funds, there are no other controls over the operations of Ambulance Service.

Moreover, in support of its agency argument, defendant says it is an agency or political subdivision of the township because it was created by resolution of the township on March 16, 1976, pursuant to 53 P.S. §65746, as amended, Act of June 30, 1969, P.L. 110, §1, which states:

"Ambulances and rescue and life saving services To acquire and to operate and maintain motor vehi-

cles for the purposes of conveying sick and injured persons of such townships and the vicinity to and from hospitals, and for such purposes to appropriate and expend moneys of the township or to appropriate money annually towards ambulance and rescue and life saving service, and to enter into contracts relating thereto. . . ."

Again, although the township may create such an organization, it is not absolutely obligated to do so. The township could have chosen to form an organization, such as a parks and recreation commission, as an arm or subordinate unit of the township; clearly, it did not select such a course. Rather the township initiated the formation of a separate corporation designed to furnish emergency ambulance benefits. For the resolution of the issue proposed by the motion for summary judgment, we hold it is immaterial that the municipality, authorized by law to do so, may choose to lend or grant money to benefit the community. However, defendant asserts, it cannot be an independent, private corporation because local governments are prohibited by law from appropriating or expending public money or from extending its credit to private corporations. The short answer to that proposition is that the legislature has deemed it proper to allow public funds to be used in limited circumstances, such as ambulance functions, which are in effect community-based entities furnishing benefits to the community at large. To be sure, section 65746 speaks of the townships and the vicinity. Defendant has not shown that the authorizing statute restricts ambulance benefits only to the township itself.

In considering the record in the light most favorable to the plaintiff as we are required by law to do, the record shows the township had put into motion the preparatory steps to establish an ambulance ser-

vice. After the township had given the defendant an initial loan to get the organization started, defendant began operations by incorporating under the laws of this Commonwealth. It later paid off that initial loan. Although it receives certain financial benefits such as utilities a rent-free building, fiscal grants and insurance coverage from the municipality, Ambulance Service is an independent, non-profit corporation. It has its own by-laws subject to amendment by its own members; it does its own fund-raising; it has its own officers and volunteers; its directors and officers are selected by its volunteer members. It selects and purchases its own equipment, trains its volunteers, and sets its own standards of operations.

Traditionally, the furnishing of ambulance benefits in this area has been private. For many years local funeral directors provided those services as an adjunct of their profession. With the advent of increased governmental regulation including the requiring of specialized training for ambulance personnel, the funeral directors declined — with good reason — to continue to offer the benefits, particularly in view of the rapidly increasing costs. Accordingly, ambulance companies were formed, usually under the non-profit corporation laws.

But defendant contends the issue before the court is controlled by Lacey Park Volunteer Fire Company v. Board of Supervisors, 27 Pa. Commw. 54, 365 A.2d 880 (1976). We find Lacey Park to be distinguishable. That case involves the power of a municipality to control fire-fighting activities of a local fire company, a governmental function subject to control specifically provided for fire companies under section 702 of the Second Class Township Code, the Act of May 1, 1933, P.L. 103, Art. VII, §702, as amended, 53 P.S. §65704. The issue of tort immuni-

ty is absent in Lacey Park. The statute in question in the instant case, 53 P.S. §65746, does not stipulate for the supervision and control required of fire activities.

Since we hold that defendant is neither a subordinate governmental activity of the township nor an agency of the municipality, Ambulance Service is not entitled to the immunity granted to municipalities by virtue of the Municipal Tort Claims Act.

Therefore, if municipal immunity is not available, plaintiff has averred sufficient allegations under section 323 of the Restatement (Second) of Torts, regarding the liability of one who gratuitously or for consideration undertakes to render services to another, and under section 46, where liability may be imposed for emotional distress.* Factual questions are presented whether the dispatcher agreed to render emergency service and whether Mrs. Schulmeister relied upon the undertaking. Also questions are presented whether there was an implied in fact contract and the real or apparent au-

---

*Section 323 provides; "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) The harm is suffered because of the other's reliance upon the undertaking.

Accord: Hamil v. Bashline, 224 Pa. Super. 407, 307 A.2d 57 (1973). Section 46 provides:

(a) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

thority of the dispatcher. All of these issues are for the jury to resolve.

### ORDER

And now, this May 24, 1984, the motion for summary judgment filed by defendant, Union Township Ambulance Service, is denied. The court administrator is directed to place the case for jury trial on the civil trial list.