Jones & Laughlin Steel Corporation, Petitioner
v. Workmen's Compensation Appeal Board
(Feiertag), Respondents.

Submitted on briefs March 11, 1985, to Judge MAC-PHAIL, and Senior Judges BLATT and BARBIERI, sitting as a panel of three.

*Ronald Ganassi, Will & Keisling,* for petitioner.

*Alexander J. Pentecost,* for respondent, Charles Feiertag.

OPINION BY SENIOR JUDGE BARBIERI, July 30, 1985:

Jones & Laughlin Steel Corporation (employer) appeals here an order of the Workmen's Compensation Appeal Board (Board) which affirmed a referee's award of benefits to Charles Feiertag (Claimant) under Section 108(n) of The Pennsylvania Workmen's Compensation Act (Act).[1] The employer challenges the referee's finding as to the date of disability as well as the timeliness of Claimant's notice

---

[1] Act of June 2, 1915, P.L. 762, *as amended,* 77 P.S. §27.1(n).

of disability and of the filing of the claim petition. We affirm.

Claimant began working for the employer in 1945 and retired on January 17, 1974. During this period of employment, he was exposed to arc-welder fumes, acid fumes and smoke. Since 1969, Claimant had experienced shortness of breath which grew progressively more severe and finally brought on his retirement in 1974. In February 1976, Claimant was hospitalized for breathing difficulties at which time his physician, Dr. Wallace Zernich, diagnosed him as totally disabled due to a work-related lung disease. Dr. Zernich, however, failed to so inform Claimant of his opinion and Claimant remained unaware of both the nature of his disability and its possible relationship to his employment. On December 19, 1979, Claimant was examined by Dr. Jerry D. Silverman who concluded that he was totally disabled due to mixed dust pneumoconiosis, chronic bronchitis, and emphysema which had occurred as a result of Claimant's exposure to dust, fumes and smoke throughout his period of employment.[2] Dr. Silverman's opinion was contained in a report which was forwarded to Claimant's attorney. That attorney, due to a potential conflict of interest with the employer,[3] failed to divulge the contents of Dr. Silverman's report to the Claimant. After unsuccessfully attempting to obtain information from the attorney, Claimant personally contacted Dr. Silverman in December 1980 and received a

---

[2] Claimant's employment history also included exposure to coal and asbestos dusts from 1928 through 1945.

[3] The attorney who represented Claimant at this time was connected with counsel for the employer. When Dr. Silverman's report was received, counsel felt that a potential conflict of interest existed with regard to his continued representation of the Claimant in light of Dr. Silverman's conclusions. Counsel attempted to resolve this potential conflict before divulging the contents of Dr. Silverman's report to the Claimant.

copy of his report on December 23, 1980. Upon learning the contents of the report, he promptly secured new counsel and sent the employer a notice of disability by certified mail on January 7, 1981. A claim petition[4] was filed on his behalf on January 13, 1981. After holding several hearings, the referee, on June 4, 1982, issued a decision which awarded Claimant compensation for a disability resulting from an occupational disease under Section 108(n) of the Act. The employer appealed this decision to the Board. The Board affirmed the referee and this appeal followed.

Before this Court, the employer contends that (1) Claimant's occupational disease did not occur within three hundred weeks after January 17, 1974, the date of his last exposure to the hazard, as set forth in Section 301(c)(2) of the Act;[5] (2) Claimant failed to give timely notice of disability to the employer as required by Section 311 of the Act;[6] and (3) Claimant's claim petition was not filed within the three-year period mandated by Section 315 of the Act.[7] We shall address these issues seriatim.

We initially note that a workmen's compensation claimant has the burden of proof to show that he or she is entitled to benefits. *Haney v. Workmen's Compensation Appeal Board (Patterson-Kelley Co., Inc.)*, 65 Pa. Commonwealth Ct. 461, 442 A.2d 1223 (1983). Also, a claimant has the burden of proving timely notice of disability as compliance with the notice requirement of Section 311 is mandatory. *Tady*

---

[4] Claimant filed both a claim petition under Section 108(n) of the Act as well as under Section 301(i) of the Pennsylvania Occupational Disease Act, Act of June 21, 1939, P.L. 566, *as amended*, 77 P.S. §1401(i). As Claimant successfully prosecuted his claim under Section 108(n) of the Act, his Section 301(i) claim under the Occupational Disease Act was dismissed.

[5] 77 P.S. §411(c)(2).

[6] 77 P.S. §631.

[7] 77 P.S. §602.

*v. Workmen's Compensation Appeal Board (Republic Steel Corp.)*, 86 Pa. Commonwealth Ct. 582, 485 A.2d 897 (1985). Where the party with the burden of proof has prevailed before the referee and the Board has taken no additional evidence, as is the case here, our scope of review is limited to a determination of whether constitutional rights were violated, an error of law committed, or findings of fact are unsupported by substantial evidence. *Exxon Co. v. Workmen's Compensation Appeal Board (Grdgon)*, 88 Pa. Commonwealth Ct. 642, 491 A.2d 318 (1985). As the party who prevailed before the referee, the Claimant is also entitled to the benefit of the most favorable inferences to be drawn from the evidence. *Yellow Freight System v. Workmen's Compensation Appeal Board (McGill)*, 72 Pa. Commonwealth Ct. 500, 456 A.2d 1160 (1983).

Section 301(c)(2) of the Act requires that for a disability due to an occupational disease to be compensable, it must occur within three hundred weeks after the last date of employment in an occupation or industry in which the hazard is present. Here, the Claimant was last exposed to the hazard on January 17, 1974, his last day of work for the employer. The three hundred week period of Section 301(c)(2) would have expired on October 17, 1979. The referee specifically found that Claimant's disability began in February 1976 as a result of work-related restrictive and obstructive lung disease. The referee based this finding upon the testimony of Dr. Zernich, the physician who treated Claimant during his February 1976 hospitalization. Our review of Dr. Zernich's deposition satisfies us that it provides substantial evidence to support the referee's finding as to when Claimant's disability commenced. We must, therefore, reject the employer's challenge to the sufficiency of the evidentiary support for that finding.

The employer next argues that the Claimant failed to provide it with notice of disability in a timely fashion as required by Section 311 of the Act. Section 311 requires that, in the case of a disability resulting from an occupational disease, no compensation shall be payable unless a claimant provides the employer with notice of the disability within one hundred twenty days after the occurrence of the disability.[8] Here, the referee found that Claimant's disability commenced in February 1976 and that notice of disability was not received by the employer until January 9, 1981.[9] However, the referee also found that while Claimant was disabled as of February 1976, he was aware neither of his disability nor its work-related cause until he received Dr. Silverman's report on December 23, 1980. Claimant's lack of awareness of these facts was due to the failure of Dr. Zernich and Claimant's prior attorney to divulge those facts to him. Where the disability or its relationship to a claimant's occupation is not known to the claimant, we have held that the notice period does "not begin to run until" the claimant has: (1) knowledge or constructive knowledge (2) of a disability (3) which exists, (4) which results from an occupational disease, and (5) which has a possible relationship to his or her employment. The plain language of Section 311 requires that all five elements cojoin to commence the running of the notice period. *Republic Steel Corp. v. Workmen's Compensation Appeal Board (Zacek)*, 47 Pa. Commonwealth Ct. 74, 77, 407 A.2d 117, 118 (1979); *United States Steel Corp. v. Workmen's Com-*

---

[8] Section 311 provides for the notice period to run from occurrence of "the injury" but a provision at the end of the section defines "injury" in occupational disease cases as "disability resulting from occupational disease."

[9] The notice of disability was mailed by the Claimant on January 7, 1981 but not received by the employer until January 9, 1981.

*pensation Appeal Board (Engster)*, 10 Pa. Commonwealth Ct. 247, 249, 309 A.2d 842, 843 (1973).

The referee, in one of his additional findings, specifically found that:

> That the claimant first knew or by reasonable diligence should have known that he was disabled as a result of the pre-existing occupational disease on December 23, 1980. Since notice of said disability was given to the employer on January 9, 1981 said notice complied with Section 311 of the Act.

The other findings relevant to the giving of timely notice are nine, ten, thirteen, fourteen and seventeen.[10]

---

[10] The referee's findings of fact nine, ten, thirteen, fourteen and seventeen read as follows:

9. That the claimant had been treated for his breathing problem since 1969 by Dr. Wallace Zernich. The claimant was hospitalized by the doctor in February, 1976 for treatment of said condition. At that time it was the doctor's opinion that the claimant was disabled due to occupationally related obstructive and restrictive lung diseases but he failed to advise the claimant that his disability was occupationally related.

10. That on December 19, 1979 the claimant was examined by Dr. J. D. Silverman. Chest x-rays were interpreted as revealing pneumoconiosis, category 1/1, type s, all six zones. Pulmonary function studies revealed significant restrictive and very severe obstructive lung disease. It was the doctor's opinion based on the history, his clinical examination, x-ray findings and pulmonary function studies that the claimant was totally and permanently disabled due to mixed dust pneumoconiosis, chronic bronchitis and emphysema which had occurred as a result of his exposure to dusts, fumes and smoke during all of his employment with various employers from 1928 through January 17, 1974. It was further the doctor's opinion that the claimant was exposed to the hazard of said disease by reason of his employment, said diseases were causally related to his occupations and that the incidence of said diseases were substantially greater in his occupation than in the general population.

The record amply supports the referee's finding that, although the Claimant was disabled by an occupational disease as of February 1976, no such diagnosis was communicated to him until his receipt of Dr. Silverman's report on December 23, 1980. It was only at that time that the record shows a conjunction of all five elements: *knowledge,* actual or constructive, of a *disability* in existence and *resulting from an occupational disease,* as well as having a *possible relationship to his employment.* Therefore, the referee correctly found that the time period for giving the employer notice of disability began to run on December 23, 1980 and that the notice given the employer on January 9, 1981 was timely and in compliance with Section 311.

The employer's final contention concerns the timeliness of the claim petition. Specifically, the employer contends that the claim petition filed on January 13, 1981 was outside of the three-year limitation period of Section 315 of the Act and that Claimant's claim for compensation is barred. Section 315 of the Act provides that claims for compensation shall be barred unless brought within three years from the date of

---

. . . .

13. That in February, 1976, as indicated by Dr. Zernich, the claimant became disabled due to occupationally related restrictive and obstructive lung diseases.

14. That on December 19, 1979, as indicated by Dr. Silverman, the claimant became totally and permanently disabled due to occupationally related lung diseases; namely, mixed dust pneumoconiosis, chronic bronchitis and pulmonary emphysema.

. . . .

17. The claimant first knew or by reasonable diligence should have known that his disability was occupationally related on December 23, 1980 when he was so advised by a report received from Dr. Silverman.

disability resulting from an occupational disease. Since the referee found that Claimant's disability began in February 1976, a literal reading of Section 315 would seem to require the reversal of the Board and a dismissal of Claimant's petition as untimely.

The referee avoided this result by finding "that the three-year limitation period of Section 315 commenced on October 17, 1979, the date on which the three hundred week period of Section 301(c)(2) expired, and that, therefore, Claimant's petition of January 13, 1981 was timely."[11] We agree with the employer that there is no basis in law for this conclusion. The three hundred week period of Section 301(c)(2) is a limitation upon the time in which a disability due to a work-related disease can develop after employment and still be compensable. The three-year period contained in Section 315 is a limitation upon the time in which claims for compensation for such disability can be brought *after* the disability occurs. The starting point for the limitation period of Section 301 (c)(2) is the date of a claimant's last employment wherein he or she was exposed to the hazard causing the occupational disease. The starting point for the limitation period of Section 315 is the occurrence of the disability itself. Where a claimant becomes dis-

---

[11] The "finding" is basically a conclusion of law. It reads:

19. That the claimant's Claim Petition was timely filed with the Bureau in Harrisburg on January 13, 1981, which was within 3 years of October 17, 1979 as indicated in Finding No. 16 above.

The finding referred to, No. 16, reads:

16. That the claimant became totally and permanently disabled due to occupational diseases in February, 1976, within 300 weeks of the date of his last exposure on January 17, 1974 and said disability continued to October 17, 1979, the expiration of the 300 week period and continues to the present.

abled due to an occupational disease within the limitation period of Section 301(c)(2), the time period in which he or she must bring a claim petition under Section 315 commences at that time, not the expiration of the Section 301(c)(2) time limit. The referee's finding to the contrary, basically a conclusion of law, is, of course, erroneous as a matter of law and must be reversed.

Our rejection of the referee's legal conclusion in this "finding" as to the commencement of the Section 315 limitation period on October 17, 1979, however, does not require our reversal of the Board's order. We are cognizant that our Supreme Court has held that the similar limitation period of Section 315 of The Pennsylvania Occupational Disease Act (Occupational Disease Act)[12] commences from the date when pertinent medical diagnosis of the occupational disease causing the claimant's disability is competently established *to the claimant's knowledge. Ciabattoni v. Birdsboro Steel Foundry & Machine Co.,* 386 Pa. 179, 182, 125 A.2d 365, 367 (1956). As noted by the Court in *Ciabattoni,* an "occupational disease" is latent and insidious and the resultant disability is often difficult to determine. As such, it is distinguishable from an injury by accident which results from a definite event, the time and place of which can be fixed and of which the employee is almost invariably aware. *Id.* at 184, 125 A.2d at 368. This principle that, in cases of total disability but not death, the limitation period of Section 315 of the Occupational Disease Act commences only when the claimant knows, by competent medical diagnosis, that his or her disability is caused by an occupational disease, remains the law. *See Workmen's Compensation Appeal Board v. Chobanian,* 19 Pa. Commonwealth Ct. 632, 339 A.2d

---

[12] Act of June 21, 1939, P.L. 566, *as amended,* 77 P.S. §1415.

126 (1975) (discovery rule of *Ciabattoni* applicable only to total disability cases, not death cases).

Our comparison of Section 315 of the Act and Section 315 of the Occupational Disease Act convinces us that the discovery rule set forth in *Ciabattoni* is equally applicable to disability cases resulting from occupational diseases which come under Section 108(n) of the Act. The language of both sections, as pertaining to the limitation period, is strikingly similar. In the area of tolling the limitation period, the Occupational Disease Act provision is more restrictive than is its counterpart under the Act.[13]

We are also aware that, in attempting to ascertain the intention of the General Assembly in construing a statute, Section 1922(1) of the Statutory Construction Act of 1972, 1 Pa. C. S. §1922(1), provides that a court must presume that the General Assembly does not intend a result which is absurd, impossible of execution or unreasonable. To adopt the construction of Section 315 of the Act as urged by the employer would result in just such an absurd and unreasonable result. As noted previously, there is no question that the period during which a claimant must give notice of a disability under Section 311 of the Act does not begin until the claimant knows or should have known that he or she is disabled from an occupational disease. *Republic Steel Corp.* However, under the employer's argument, where an employee is disabled by an occupational disease but is unaware of either the disability or its work-related cause, the employee

---

[13] The language pertaining to tolling of the limitation period until discovery for cases involving ionizing radiation contained in Section 315 of the Act which differs from that contained in Section 311 of the Act is completely absent from Section 315 of the Occupational Disease Act. The great emphasis which the employer places on the difference in language between Sections 311 and 315 of the Act is misplaced.

must still file a claim petition within three years of the date of disability or be barred from compensation, even though, under Section 311, the employee need not notify the employer of the disability until the employee knows or should have known that he or she is disabled from an occupational disease.

In short, the employer would have us hold that, although an employee cannot give notice because he does not know that he has a claim, he must, nevertheless, file for a claim that he does not know exists. In our view, such an absurd and unreasonable result simply could not have been intended by the Legislature. Furthermore, in *Ciabattoni*, it was ruled that the statute of repose theory applicable under Section 315 of the Act as to injuries was not applicable to Section 315 of the Occupational Disease Act, the Supreme Court ruling that the latter version of Section 315 was "not a legislatively intended statute of repose, . . ." and that the time fixed for filing a claim petition for occupational disease causing disability would not begin to run until the "pertinent medical diagnosis [of occupational disease causing disability] is competently established *to the knowledge of the claimant. . . .*" (Emphasis the Court's.) *Ciabattoni,* 386 Pa. at 182, 125 A.2d at 367. This view is further supported, we believe, by the fact that the last sentence in Section 311 and in Section 315 reads: "[t]he term 'injury' in this section means, in cases of occupational disease, *disability* resulting from occupational disease." (Emphasis added.) Aside from the fact that this indicates a legislative intent to state similar tests construing both, the initiation of the notice period and the running of the claim filing period, we believe, as was ruled in *Lowe v. American Radiator & Standard Sanitary Corp.,* 178 Pa. Superior Ct. 137, 113 A.2d 330 (1955), that the word "disability" in both sections is intended to mean "compensable dis-

ability." As so construed, of course, there would be no question that the discovery rule must be applied to the running of the period in Section 315, as well as to the notice period in Section 311. Indeed, our conclusion here is bolstered by the long-established principle that the compensation laws are remedial legislation which is to be broadly construed to effectuate its remedial and humanitarian purposes, *Bley v. Department of Labor and Industry*, 484 Pa. 365, 399 A.2d 119 (1979), and also "with the approach that an overly technical construction should not be placed on the word 'filed' as used in Section 315 of the Compensation Act." (Citations omitted.) *Findlay Refractories v. Workmen's Compensation Appeal Board (Renz)*, 52 Pa. Commonwealth Ct. 454, 415 A.2d 1270 (1980).[14]

We conclude that, in cases of total disability due to an occupational disease, the three-year period in which a claimant must file a claim petition under Section 315 of the Act commences at the time when a claimant knows, or should have known through reasonable diligence, of his or her disability and that it is caused by an occupational disease. For the Claimant here, that event occurred on December 23, 1980 when Claimant learned the contents of Dr. Silverman's medical report. As his claim petition was filed less than a month thereafter, it is timely under Section 315 of the Act.

Accordingly, for the reasons stated, we will affirm the Board's order.

---

[14] For the reasons stated, including the Supreme Court's ruling in *Ciabattoni*, the cases relied upon by defendant, *D'Andrea v. Brookville Manufacturing Co.*, 39 Pa. Commonwealth Ct. 55, 394 A.2d 1086 (1978), and *Workmen's Compensation Appeal Board v. Neimann*, 24 Pa. Commonwealth Ct. 377, 356 A.2d 370 (1976), which are not occupational disease cases, are clearly distinguishable.

#### ORDER

AND Now, this 30th day of July, 1985, the order of the Workmen's Compensation Appeal Board at Docket No. A-83997, dated December 1, 1983, is hereby affirmed.