103 Pa. Commonwealth Ct. 536 (1987)
520 A.2d 1234
Mike Barna, Jr., Petitioner
v.
Workmen's Compensation Appeal Board (Rochester & Pittsburgh Coal Company) (Heyl & Patterson Construction Company) (Shenango, Inc.), Respondents.
No. 2836 C.D. 1985.
Commonwealth Court of Pennsylvania.
Argued October 10, 1986.
February 6, 1987.
Argued October 10, 1986, before Judges CRAIG and BARRY (P.), and Senior Judge BLATT, sitting as a panel of three.
*537 Timothy P. Creany, Pawlowski, Creany & Tulowitzki, for petitioner.
Paul E. Sutter, Tillman & Thompson, for respondent, Rochester and Pittsburgh Coal Company.
Judith H. Veres, William K. Herrington & Associates, for respondent, Heyl & Patterson Construction Co.
Edward G. Kuyat, Jr., Kuyat & Walker, for respondent, Shenango, Inc.
OPINION BY JUDGE BARRY, February 6, 1987:
This appeal results from an order of The Workmen's Compensation Appeal Board (Board) which affirmed a referee's decision dismissing claimant's petition for benefits under the disease recovery provisions of the Pennsylvania Workmen's Compensation Act.[1]
The Board decision referred to above was actually the second issued in the course of the proceedings involved *538 in the present appeal. Those proceedings were initiated on January 24, 1980, when the claimant filed a claim petition alleging total disability due to coal worker's pneumoconiosis. That petition, which was filed against Rochester and Pittsburgh Coal Co. (R&P), was followed two months later by a second petition filed against Shenango, Inc. (Shenango), an earlier employer of the claimant. After receipt of the second petition, the Workers' Compensation Bureau issued an "Assignment of Petition" form to the appropriate local referees. The assignment memo was captioned "Amended WC/OD."
A hearing was thereupon convened attended by Claimant, R&P and Shenango. Counsel for R&P immediately moved for dismissal on the grounds that it could not be liable under the Act. This motion was premised on the belief that, for an employer to be liable, it need have exposed a claimant to a disease hazard for at least one year during the 300-week period prior to disability. Cf. Section 301(c)(2) of the Act. Claimant, however, did not allege one year or more of employment with R&P during such period. Having concurred with R&P's interpretation of Section 301(c)(2), the referee granted the dismissal motion, concluding as follows:
Where an employee did not work in an exposure hazard at least one full year for any employer during the three hundred (300) week period prior to disability, the employer liable for the compensation shall be that employer giving the longest period of employment in which the employee was exposed to the hazards of the disease claimed.
Defendant-employer, [R&P], having shown by competent, credible and substantial work records that Claimant was only employed by [R&P] from June 24, 1974 through April 8, 1975, said defendant is hereby dismissed as having any liability.. . .
*539 Conclusion of Law Nos. 2 & 3. No appeal was taken by the claimant from the dismissal.
Proceedings continued against Shenango and medical testimony was adduced. The referee then granted the petition, premised on (1) the factual finding of a partial disability and (2) the legal conclusion that Shenango was the liable employer because having exposed claimant to a disease hazard for "the longest period," i.e., some thirteen years. This was so held notwithstanding the fact that claimant's last employment with Shenango ended more than 300 weeks before disability.
On Shenango's appeal, the Board reversed. In an opinion by Chairman Fergus, it explained its interpretation of Section 301(c)(2):
To determine the proper party employer here, the referee should go back 300 weeks prior to disability (August, 1979) to find the employer with the longest period of exposed employment of more than one year, if that is possible, and if not, then to find the employer with the longest period of exposed employment of less than one year's duration. The referee need not look behind the 300 week period because these claims are compensable only where the disability or death occurred within 300 weeks after the exposed employment.
Board Decision at 3. The Board then remanded for findings with respect to the employment history of the claimant during the 300-week period. Direction was also made for joinder of the appropriate parties.
On remand, however, the referee dismissed the petition in its entirety. This decision was reached (1) because Shenango was not an employer during the 300 weeks preceding disability; and (2) because the prior, non-appealed dismissal of R&P was res judicata with respect to further attempts to hold R&P liable. This was *540 so held notwithstanding the fact that it, R&P, was the employer who, within the critical 300-week period, exposed the claimant to the disease hazard for the greatest period of time, and would, then, ostensibly be the liable employer.[2] The renewed claim against R&P was also held to be barred by the three-year statute of limitations. Claimant appealed the dismissal and the Board, again per Chairman Fergus, affirmed in all respects. Claimant then initiated the present petition for review.
Our scope of review is limited to a determination of whether the critical findings of fact are supported by substantial evidence, whether an error of law was committed, or whether any constitutional rights were violated. See Estate of McGovern v. State Employees' Retirement Board, 512 Pa. 377, 517 A.2d 523 (1986). And see Kear v. Workmen's Compensation Appeal Board (Fairman Drilling Co.), 102 Pa. Commonwealth Ct. 193, 517 A.2d 586 (1986) (applying McGovern to cases brought under Workmen's Compensation Act). Claimant alleges only errors of law, specifically, (1) that the Board has erred in its construction of Section 301(c)(2); (2) that the prior dismissal of R&P is not res judicata; and (3) that the petition to join R&P is not barred by the statute of limitations.

1. Employer Liability Scheme of Section 301(c)(2)

We address first the construction of Section 301(c)(2), the disputed portion of which was added in 1974.[3]
*541 The cited section, which contains a number of provisions, establishes the availability of disease disability recovery under the Act, and was included in the Act in 1972.[4] The 1974 addition reads as follows:
The employer liable for compensation provided by Section 305.1 or Section 108, subsections (k), (l), (m), (o), (p) or (q), shall be the employer in whose employment the employee was last exposed for a period of not less than one year to the hazard of the occupational disease claimed. In the event the employee did not work in an exposure at least one year for any employer during the three hundred week period prior to disability or death, the employer liable for the compensation shall be that employer giving the longest period of employment in which the employee was exposed to the hazards of the disease claimed.
Section 301(c)(2) of the Act, 77 P.S. §411(2).
The present dispute arises from the ambiguity of the last sentence of the amendment. That sentence, when referring to "that employer giving the longest period of employment," does not specifically refer to the 300-week period as the time interval to be considered in the determination. Whether it is that interval  or is, instead, a claimant's hazard-related employment ab initio  which is to be considered in determining the employer with the longest period of employment is the pivotal issue.
We are satisfied that the Board has correctly interpreted Section 301(c)(2) in declaring that the liable employer is that which exposed the claimant for more than one year or more, if such employer exists, "and if not . . . the employer with the longest period of exposed *542 employment of less than one year's duration"[5]within the 300-week period prior to disability. As it is not argued that Shenango employed claimant within this period, the referee in his decision on remand properly dismissed that party, and we thus detect no error in the Board's affirmance.
Nor do we discern any error in the Board's reasoning. That reasoning has at its base, see Board decision, 12/14/84, at 3, acknowledgment of the disease manifestation requirement of Section 301(c)(2), a provision which antedates the employer liability amendment. The involved provision reads:
[W]henever occupational disease is the basis for compensation, for disability or death under this act, it shall apply only to disability or death resulting from such disease and occurring within three hundred weeks after the last date of employment in an occupation or injury to which he was exposed to hazards of such disease[.]
Id. Provisions such as the above are designed to limit an employer's liability by excluding claims based on disease disabilities accruing at a time far-removed  greater than 300 weeks  from the existence of an employment relationship. Cf. Bethlehem Steel Co. v. Gray, 4 Pa. Commonwealth Ct. 590, 592, 288 A.2d 828, 829 (1972) (construing strictly correlative four-year manifestation requirement of disease act, "there is unhappily a practical limit to the amounts of benefits employers and the public can provide.").[6]And compare Kilvady v. U.S. *543 Steel Corp., 90 Pa. Commonwealth Ct. 586, 592, 496 A.2d 116, 120 (1985) (citing, inter alia, Gray, court refuses to apply discovery rule to four-year disease-death "limitation" of disease act).[7]
*544 The Board correctly viewed this provision as precluding the initial referee's interpretation of the amendment to mean that one look beyond the 300 weeks prior to disability for an employer with greater than one year of disease-hazard exposure. To so interpret the statute would, in the present case, (1) negate the effect of the pre-existing statutory provision by disregarding the provision's 300-week manifestation requirement which was designed to protect remote employers from liability, and (2) would, paradoxically, make compensable claims which had been precluded in mandatory statutory language. We are, of course, loath to interpret a statutory scheme in a manner in which all portions cannot be read and made applicable together. Section 1921 of the Statutory Construction Act, 1 Pa. C. S. §1921 ("Every statute shall be construed, if possible, to give effect to all its provisions"). We thus conclude that no error was committed by the Board. See also I. Stander, Guide to Pennsylvania Workers' Compensation 22 (1979) (in determining liable employer, writer opines that one "go[es] back only 300 weeks prior to disability or death to find the employer with the longest period of exposed employment of less than a year's duration because these claims are compensable only where the disability or death occurred within 300 weeks after the exposed employment.") (emphasis added). Accord I. Stander, Guide to Pennsylvania Workers' Compensation[:] Second Series 343-44 (1984).
Claimant acknowledges the 300-week manifestation provision, but nevertheless argues that the legislature intended that where an exposure has been experienced within that period, such exposure "gives rise to a remedy" and that "the remedy need not be the one that creates liability." Claimant, in conjunction with this notion, continues to defend the initial referee's decision, viz., claimant argues that where there has been a less than one-year exposure during the 300 weeks, one is to *545 look beyond the 300 weeks for an employer exposing claimant to the hazard for one year or more.
Claimant's argument, fully developed, is premised on the notion that the legislature viewed a claimant such as the present petitioner  who, during the 300 weeks preceding disability, was exposed to the disease hazard, but for less than a year with any employer  as experiencing too tenuous an exposure during the period to connect it with the ultimate disability. Because of the tenuous connection, claimant maintains that the legislature intended that previous employers of greater than one year's exposure were to be liable, regardless of the remoteness of that exposure. The legislature could not have intended in its 1974 amendment, claimant asserts, to attribute liability to an employer who, within the 300 weeks, employs claimant for (as here) eight months, and to exculpate an employer who employs claimant for (as here) thirteen years, though concededly at a far earlier time.
Claimant's reasoning is rational, but we view the discussion in the foregoing text to be dispositive of the issue. Remote employers have always enjoyed the protection of disease manifestation provisions,[8] and we will not read the "employer liability" amendment to somehow re-trigger liability by virtue of a brief, subsequent employment with a different employer to remove such protection. While the ascertainment of liability in the present case may seem arbitrary, liability distribution and limitation schemes such as those dealt with in the present case may often, by their very nature, produce such results. Cf. Gray, 4 Pa. Commonwealth Ct. at 593, 288 A.2d at 829.

*546 2. Res Judicata Effect of Earlier Referee Decision

Claimant and Shenango essentially agree[9] that, if we affirm the Board's interpretation of Section 301(c)(2), R&P would be the liable party, because it was the employer which employed claimant in the presence of the disease hazard for the longest period in the 300 weeks prior to disability. R&P argues, however, that the prior dismissal constituted a conclusive determination of its freedom from liability. That dismissal, it argues, was not appealed by the claimant, and it thus became a final decision which cannot now be overturned. This was, of course, the view of the referee and Board in their second resolution of the case. Claimant, however, maintains that the earlier dismissal of R&P was interlocutory and not appealable, and thus cannot be viewed now as a final order conclusively determining, for purposes of litigation, R&P's liability. We disagree.
This case presents a situation wherein a claimant with a colorable cause of action is seeking to establish the liability of one of multiple defendants. In such instances an order dismissing or otherwise terminating the involvement of one of the defendants from the litigation may well constitute a final order, notwithstanding the fact that the litigation continues as to other defendants. See, e.g., Lane v. Schacht, 260 Pa. Superior Ct. 68, 73-74, 393 A.2d 1015, 1018 (1978) (where multiple defendants filed motions for summary judgment with respect to claims of plaintiff, held: trial court's denial of summary judgment as to two defendants were not final orders, and appeals therefrom were quashed; but held further: trial court's grant of summary judgment as to third defendant was a final order, and, hence, appealable). For purposes of this analysis "[a]n order is `final' *547 if the effect is to put one of the parties out of court and thus terminate the litigation as to that particular party." Lane, 260 Pa. Superior Ct. at 73, 393 A.2d at 1018. In ascertaining finality, the Supreme Court has adjured that
[w]hether an order is final and appealable cannot necessarily be ascertained from the face of a decree alone, nor simply from the technical effect of the adjudication. The finality of an order is a judicial conclusion which can be reached only after an examination of its ramifications. We follow the reasoning of the United States Supreme Court that a finding of finality must be the result of a practical rather than a technical construction.
Bell v. Beneficial Consumer Discount Co., 465 Pa. 225, 228, 348 A.2d 734, 735 (1975) (citing Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 546 (1949)).
Instructed by the foregoing principles, we can reach no other conclusion but that the original R&P dismissal constituted a final, appealable order. Because claimant pursued no appeal, the referee and Board correctly ruled that the dismissal now operates as res judicata, preventing claimant from relitigating the claim against R&P. On its face, of course, the dismissal clearly appears as a final order. We note in addition, however, that as a practical matter the dismissal did put an end to the litigation between the claimant and R&P. Following the dismissal order R&P neither (1) participated in the ensuing hearings, (2) obtained rebuttal medical evidence, nor (3) cross-examined claimant's expert. Indeed, the record reveals no further involvement by R&P in the case until some five years later when claimant filed his joinder petition. We are, thus, of the view that the effect of the order was to "terminate the litigation as to [a] particular party." Lane.
*548 Claimant, however, maintains that, even if the dismissal was a final order, it is unfair to "retroactively" impose upon him the burden of appealing. This argument is premised chiefly on claimant's view that all the parties seemingly accepted that the referee was correct in his initial construction of Section 301(c)(2), which interpretation, of course, would have freed R&P from liability upon the stipulated facts. It is unfair, claimant reasons, to expect him to have appealed when the alleged "consensus" of the involved counsel was that the dismissal was based on a correct reading of the law.[10] A litigant, however, surely cannot claim reliance upon an adjudicator's erroneous construction of a statute in order to excuse a failure to appeal. In the present case, further, the hearing transcript readily discloses that construction of Section 301(c)(2) was a prime matter of dispute in its "liable employer" aspect. Counsel for R&P, in zealously advancing his client's interest, convinced the referee that, given the undisputed facts, R&P could not be liable based upon a reading of Section 301(c)(2) relieving employers such as R&P of liability. When the *549 referee accepted this theory and thereupon (1) dismissed R&P; (2) announced that all "papers were to be returned to Harrisburg," and (3) instructed claimant that he had twenty days to appeal, it was incumbent upon claimant to do the latter if he wished to retain his rights against this potentially liable employer. Compare Fred Lowenschuss Associates v. DePallo, 274 Pa. Superior Ct. 290, 294-95, 418 A.2d 411, 413 (1980):
[W]hen a defendant's preliminary objections in the nature of a demurrer are sustained and the complaint dismissed, there is an appealable final order [;] and [,] to prevent the cause of action from being barred by res judicata, the order must be appealed within the prescribed period.
Id. (citing Catanese v. Scirica, 437 Pa. 519, 263 A.2d 372 (1970)). The foregoing rule, we believe, is applicable in the present case. Claimant knew, or should have known, that a potentially liable employer was being dismissed, formally and practically, from the proceedings, and should have acted to protect his right.

3. Bar of the Statute of Limitations

A renewed claim against R&P is also barred by the statute of limitations. Section 315 of the Act, 77 P.S. §602. The joinder petition was filed both (1) more than three years from the time that claimant knew, or should have known, of his claim, Jones & Laughlin Steel Corp. v. Workmen's Compensation Appeal Board (Feiertag), 90 Pa. Commonwealth Ct. 567, 496 A.2d 412 (1985); and (2) more than three years from the time of the original dismissal. We note, in the latter respect, that the ongoing nature of the claim against Shenango did not toll the limitation as to R&P. As noted in the preceding section, R&P's involvement in the case ended upon its dismissal and claimant did nothing to extend R&P's *550 status as a defendant. R&P was a total stranger to this litigation until some five years later.
In response to the statute of limitations defense, claimant asserts that the three-year bar should be ignored because, by virtue of its prior involvement in the case, R&P knew of the nature of the claim and was hence not prejudiced by its untimely re-assertion. This argument, however, has no place in compensation proceedings, where the limitations in the nature of statutes of repose run strictly, extinguishing, upon their expiration, not only the remedy of but the right to compensation. Ratto v. Pennsylvania Coal Co., 102 Pa. Superior Ct. 242, 156 A. 749 (1931). And see Riddick v. Workmen's Compensation Appeal Board (The State Correctional Institution at Graterford), 92 Pa. Commonwealth Ct. 263, 499 A.2d 694 (1985). An employer's actual knowledge of a claim, then, does nothing to toll or otherwise extend the limitation. Corcoran v. Workmen's Compensation Appeal Board (Pepperidge Farms, Inc.), 100 Pa. Commonwealth Ct. 608, 614 n.5, 515 A.2d 341, 345 n.5 (1986); Mangine v. Workmen's Compensation Appeal Board (Consolidated Coal Co.), 87 Pa. Commonwealth Ct. 543, 548 n.4, 487 A.2d 1040, 1042 n.4 (1985).
Affirmed.

ORDER
NOW, February 6th, 1987, the Order of the Workmen's Compensation Appeal Board, No. A-89868, dated September 30, 1985, is hereby affirmed.
NOTES
[1] Act of June 2, 1915, P.L. 736 as amended, 77 P.S. §§1-1065.1.
[2] Another employer during the 300-week period, Heyl & Patterson Construction Company (H&P), was also joined on remand. H&P interposed notice and statute of limitations defenses which were sustained by the referee. Petitioner in his brief and at oral argument abandoned his claim against H&P, conceding the bar of the notice and limitation defenses.
[3] Act of December 5, 1974, P.L. 782.
[4] Act of October 7, 1972, P.L. 223.
[5] Board Decision, 12/14/84, at 3; id., 10/30/85, at 2.
[6] Numerous liability-limiting provisions exist throughout compensation schemes and are discussed by Professor Larson in his treatise:

The original reason for these restrictions was the fear that the compensation system could not bear the financial impact of full liability for dust diseases. . . . As investigators began to [examine industries with dust disease hazards] they were apt to discover, to their alarm, that almost everyone had silicosis in some stage or other. . . . Some states met this . . . problem by throwing up a variety of barriers based on relation of time or degree of exposure to time of disability, death, or claim.
1B A. Larson, Workmen's Compensation Treatise, §41.81 (1985).
[7] The Kilvady discussion concerning applicability of the discovery rule of statutes of limitations to the four-year manifestation requirement was necessary to correct an aberrant trial court opinion applying the rule to allow a claim based upon death due to a greatly delayed fatal disease manifestation. Conceptually, however, such a discussion is wholly anomalous, because disease manifestation requirements, both in their disability and death contexts, do not operate as statutes of limitations  they do not, after all, have the procedural effect of declaring that "no suit shall be maintained. . . unless brought within a specified time after the right accrue[s]." Black's Law Dictionary 835 (5th ed. 1979). In contrast, the disease manifestation provisions are fully substantive provisions establishing the compensability of disease deaths and disability by requiring their occurrence within a certain period of time.

The respective sections 315 of the disease and workmen's compensation acts are, of course, the statutes of limitations of the two acts, to which the discovery rule may or may not be applicable. Compare Jones & Laughlin Steel Corp. v. Workmen's Compensation Appeal Board (Feiertag), 90 Pa. Commonwealth Ct. 567, 496 A.2d 412 (1985) (held: discovery rule applies to disease disability claims brought under section 315 of Workmen's Compensation Act); Ciabattoni v. Birdsboro Steel Foundry & Mach. Co., 386 Pa. 179, 125 A.2d 365 (1956) (held: discovery rule applicable to disability claims brought under section 315 of Occupational Disease Act); Workmen's Compensation Appeal Board v. Chobanian, 19 Pa. Commonwealth Ct. 632, 339 A.2d 126 (1975) (held: discovery rule not applicable to disease death claims brought under Section 315 of Occupational Disease Act).
[8] The four-year manifestation requirement of the disease act dates from the time of the act's promulgation. See Section 301(c) of The Pennsylvania Occupational Disease Act, Act of June 21, 1939, 77 P.S. §1401(c). A correlative provision, however, existed even earlier in section 6(b) of the short-lived Occupational Disease Compensation Act of 1937. See Act of July 2, 1937, P.L. 2714. See generally W. Skinner, Pennsylvania Workmen's Compensation 234 (3d ed. 1938).
[9] R&P, however, takes no position at this point with respect to the interpretation of Section 301(c)(2).
[10] Indeed, claimant maintains that Shenango's failure to appeal the dismissal of R&P may be viewed as having "lulled [him] into a false sense of security while preserving for itself the right to take an appeal on that very issue, while the time ran out on the Claimant to do likewise and protect his claim." Brief for Petitioner at 14. Such an argument is, of course, misconceived. First, counsel for Shenango had no duty to advise claimant or his counsel with regard to the wisdom of appealing out of caution. Second, there is no indication from the record that Shenango ever conceded or particularly agreed with the interpretation successfully advanced by counsel for R&P. Shenango's deposing of an expert medical rebuttal witness demonstrates nothing in this regard  it cannot be construed as an admission of liability. Finally, and most importantly, any appeal by Shenango upon the R&P dismissal would have been quashed as interlocutory, as the dismissal did not, of course, terminate Shenango's involvement in the matter.